349 So.2d 247 (1977)
SUBDIVISION PLANNING ENGINEERS, INC.
v.
MANOR DEVELOPMENT CORP. and Trinity Universal Insurance Co.
No. 58853.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*248 Harold J. Zeringer, Jr., Zeringer & Zeringer, New Orleans, for defendants-respondents
Nathan Greenberg, Greenberg & Dallam, Gretna, for plaintiff-applicant.
DIXON, Justice.
Writs were granted in this case to review the correctness of the holding by the Court of Appeal denying recovery to an engineering firm for work done on a residential subdivision development.
The plaintiff, Subdivision Planning Engineers, Inc., is an engineering corporation. Defendant, Manor Development Corporation is the corporate owner and developer of a residential subdivision, and defendant, Trinity Universal Insurance Company, had issued its lien bond (under R. S. 9:4842) in order to remove the timely filed lien by the plaintiff.
The plaintiff recovered judgment in the trial court in the amount of $22,098.44 The Court of Appeal reversed, denying recovery to the plaintiff for the reason that the plaintiff's corporate existence did not commence until about 85% of the work had been performed by Ralph Davenport and John W. Mitchell, a partnership to which the plaintiff corporation is successor. The Court of Appeal reasoned that the lien statutes must be strictly construed, and that a lien could only be acquired "by those who performed the work."
The work in this case was performed in 1958 and 1959. Suit was initially filed in 1962; it was tried before a judge who was subsequently appointed to the federal bench; judgment in favor of the plaintiff was rendered by another district judge in 1972; the case was appealed to the Fourth Circuit Court of Appeal which affirmed in part, annulled in part and remanded to the district court. 290 So.2d 375 (La.App.1974).
Additional evidence was subsequently taken in the district court, again resulting in judgment for the plaintiff. The defendants again appealed, and the Court of Appeal reversed as noted above. 337 So.2d 618 (La.App.1976).
There is no dispute as to the facts in the case. Davenport and Mitchell formed an association for the purpose of doing the "off site" engineering work for the subdivision in question. The arrangement the engineers made was with the defendant developer. Much of the work was done before the corporate existence of the plaintiff began, and before the defendant developer acquired the ownership of the land on which plaintiff did the work. The plaintiff corporation was formed for the very purpose of doing the engineering work involved in this case.
The record makes it clear that the parties involvedthe corporate developer and the engineersknew and understood the status of the parties and of the development itself. In the course of the work defendant Manor Development Corporation wrote plaintiff Subdivision Planning Engineers, Inc. a letter which began: "This letter will serve to confirm our agreement and understanding relative to the services and work which you are performing and rendering for us in Live Oak Manor Sub-Division . . ." Then followed the contractual provisions which are the basis of plaintiff's claim.
The right of plaintiff corporation to sue was first raised by defendant after the case was remanded by the Court of Appeal for the taking of additional evidence to determine the amount due plaintiff. (Plaintiff had been unable to complete the entire engineering contract because Manor, in financial difficulty from the beginning, defaulted on its obligation and did not complete the development).
When the case was reopened in April of 1975, evidence showed that plaintiff's corporate existence began March 24, 1959, when the articles of incorporation (executed the month before) were filed in the office of the clerk of court. About 85% of the engineering work had been completed at that time. Defendants thereupon filed an exception of no right or cause of action which the trial court overruled. $22,098.44 was fixed as the amount due plaintiff by defendant.
*249 In spite of the favorable rulings, the attorney for plaintiff moved to reopen the case to remove the basis of defendant's attack on plaintiff's right to recover, and to eliminate another possible remand which would delay even further the termination of this extended litigation.
The trial judge denied the motion to reopen, but permitted plaintiff to make an offer of proof (C. C. P. 1636) which disclosed: the lawyer who represented plaintiff in 1959 had died seven or eight years before; in July of 1959 plaintiff borrowed money from a bank and assigned and pledged to the bank, as security, its claims against Manor; the deceased lawyer's surviving partner testified that an assignment had been executed by the partners Mitchell and Davenport to plaintiff corporation assigning their interest in the Manor contract, but that instrument could not be located in the files; Mitchell and Davenport acknowledged that they had assigned their interest in the Manor corporation to plaintiff corporation, but that the written assignment had been lost.
The trial judge correctly permitted the offer of proof, and would have been correct if he had reopened the case to receive the evidence, although he considered it unnecessary. The evidence adequately established that the partners had assigned their rights under the Manor contract to the corporation, and that the written assignment had been lost. Their subsequent act of ratification or confirmation is valid. C. C. 2272.
The Court of Appeal was in error in so strictly construing the lien statutes (R. S. 9:4801 et seq.) as to deny plaintiff the right to recover. First, at least part of the work was done by the corporation itself after the articles of incorporation were filed. Second, the statute should not be so construed as to defeat the purpose of the statute. The object of Act 298 of 1926 (the predecessor of R. S. 9:4801 et seq.) is first, to protect the claims of those whose labor, skills and material improve the immovable:
"Applying the rules of construction previously alluded to, we find that the object of the legislation is, first, to protect the claims of all persons who, for the account of the owner, contribute their labor, skills, materials, equipment, or furnish machinery in connection with the erection, construction, repair or improvement of immovable property, by creating privileges in favor of those claimants on the structure and the land upon which it stands; second, to protect the owner of the immovable from the operation of such privileges by requiring the contractor to execute a bond for that purpose; and third, to subject a person not the owner of the immovable who has work done thereon to all the obligations placed on the owner (i. e., written contract, bond, recordation, etc.) in which case (i. e., where the work is done for a non-owner) the privileges in favor of the claimants operate on whatever right the non-owner has to the use of the land. To so construe the terms of the statute meets the requirements of strict construction and gives effect to all provisions with a view to a harmonious whole." (Emphasis added). Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962).
See also R. S. 9:4814(A):
". . . nothing in this Subpart shall be so construed as to deprive any claimant of his right of action against the surety signing and bond furnished in connection with any building contract or subcontract, or against the principal obligor thereunder, which right of action against such obligor and the said surety shall accrue at any time after maturity of the claim of the said claimant."
It is true that statutes creating civil penalties and privileges are not to be extended by implication. American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206 (1935). Here there is no extension of the statute. Part of the work was done by the corporation. The rights resulting from that part which was done by the incorporators before incorporation were assigned by them to the corporation. The transfer of the right included the transfer of the accessory lien. C. C. 2645.
*250 It is also to be noted that plaintiff's contract was directly with the owner. Manor's obligation arises from its contract with plaintiff. It would exist without the lien statute. Except for the existence of plaintiff's lien (R. S. 9:4813), it need not resort to the statute for its right to recover. Trinity Universal's "lien bond" is conditioned on "the legality of (plaintiff's) claim," not the legality of the lien. R. S. 9:4842.[1] However, we do not decide in this case whether a claimant under a lien bond must have a valid lien as well as a valid claim, because we have found adequate the proof of the transfer of the incorporators' rights to the plaintiff corporation.
For these reasons the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated, at defendants' cost.
NOTES
[1] "Whenever an owner of real property shall have entered into a contract to perform private works under the laws of this state governing the letting and awarding of such contracts and in conformity with the requirements thereto, the owner of the property on which the said private work is being performed shall have the right to bond any claim or claims which may be filed or recorded against said work, whether by laborers, materialmen, suppliers, sub-contractors or general contractors, by depositing with the clerk of court of the parish in which such claims are filed or recorded, a bond with surety signed by any surety company authorized to do business in the state for an amount equal to the claim, including the cost of preparing and recording the claim plus ten per cent attorney's fees to cover the cost thereof in the event it becomes necessary for the claimant to employ an attorney to enforce collection, plus one-fourth. The bond shall be approved by the clerk of court conditioned that in the event the legality of such claim or claims is established by suit or otherwise, the bond shall remain in full force and effect to protect the interest of the claimant in the premises." R. S. 9:4842(A).