561 So.2d 822 (1990)
Will G. MANGHAM, et ux., Appellees,
v.
B. & C. WOOD COMPANY, INC., et al., Appellants.
No. 21494-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellants.
William R. Jones, Coushatta, for appellees.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff-mortgagees sued a timber company and its insurer for damages under La.R.S. 9:5382 for cutting and removing timber from mortgaged property without the written consent of the mortgage holders. From a judgment in favor of plaintiffs for the balance due on the mortgage note, interest and attorney fees, defendants appealed. For the reasons explained, we affirm.
Will and Edna Mangham, longtime residents of Baton Rouge, owned several pieces of property located in Red River Parish. They employed Dickerson Real Estate, of Red River Parish, to sell those properties. As a consequence, by credit deed executed in November 1984, the Manghams sold to Harry and Barbara Moseley a 32 acre tract of land in Red River Parish for $32,000. The sum of $6400 was paid in cash and the balance financed, with the credit portion represented by a promissory note secured by a mortgage on the property. The tract was heavily wooded and had no improvements on it. The vendees indicated that they were purchasing it for a homesite.
Sometime in 1984, after filing of the credit deed, the Moseleys sold to B. & C. Wood Company, Inc. ("B & C Wood") all of the merchantable timber on the tract for $13,500. The Manghams were not informed of the timber sale nor was their consent secured.
This suit was filed by the Manghams against B & C Wood and its insurer on September 28, 1988. Defendants answered, generally denying the allegations of the petition. An exception of one year prescription was later filed.
At the trial it was stipulated that B & C Wood had cut the timber on the mortgaged property in the latter part of 1984; the *823 value of the timber cut was $13,500; the timber was cut without the written consent of the mortgagees; and B & C Wood was unable to find a timber deed from the Moseleys to it.
Mangham denied that he ever gave the Moseleys permission to have the timber cut. Mangham further asserted that he did not learn the timber was cut until the latter part of April or the first part of May, 1988.
W.L. "Scrub" Mangham, brother of Will Mangham, testified he learned of the timber cutting soon after it occurred. As to informing Will, he said: "I believe I told him once upon a time that they had cut all the timber off the place."
Herschel Guillot, a salesman for Dickerson Real Estate who handled the sale, said he noticed the timber had been cut a few months after the sale, but never informed plaintiffs.
Defendants sought to prove, through the testimony of Harry Moseley and Guillot, that during the course of negotiations over the sale of the property Will Mangham had agreed that the Moseleys could have the timber cut.
In a written opinion the trial court ruled in favor of plaintiffs. Finding that plaintiffs did not learn of the timber cutting until April or May, 1988 and filed suit within one year, the plea of prescription was overruled. It was further concluded that under La.R.S. 9:5382 and 3:4278,1, plaintiffs were entitled to a judgment for the balance due on the mortgage note, interest and attorney fees.
On appeal, defendants contend the trial court erred in:
1) Finding plaintiffs' action had not prescribed;
2) Applying La.R.S. 9:5382 and 3:4278.1 to allow recovery for the unpaid amount of the note and attorney fees;
3) Allowing plaintiffs to receive money from the original mortgagor, money awarded as judgment in this case and the possibility to retain the land after termination of this matter, all contrary to principles of equity.
Prescription
Pertinent Civil Code articles dealing with prescription are:
Article 3492. Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
Article 3493. When damage is caused to immovable property the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired knowledge of the damage.
The party pleading prescription has the burden of proof. Foster v. Manville Forest Products Corp., 465 So.2d 920 (La.App. 2d Cir.1985).
Will Mangham denied having knowledge of the timber cutting until the spring of 1988. Mangham's brother could not remember when he told plaintiff of the cutting. Contrary to defendants' contention, there was no showing that Guillot remained the agent of the Manghams after the credit sale and that his knowledge should be imputed to them. Furthermore, the petition did not allege the timber was cut more than a year before the suit was filed.
On this issue the trial court made a factual finding. We cannot say that it was clearly wrong. Therefore, no error was committed in overruling the plea of prescription.
Application of La.R.S. 9:5382 & 3:4278.1
La.R.S. 9:5382 provides:
The holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person who, without the written consent of the mortgagee, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself or another, any trees, buildings, or other immovables covered by the mortgage.
Recovery by the mortgagee may not be for more than the unpaid portion of the secured indebtedness, plus interest, *824 advances, court costs, and attorney's fees, provided such recovery may be had severably or jointly, with the mortgagor land owner.
La.R.S. 3:4278.1 provides in part:
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed. However, the provisions of this Section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. If a good faith violator of Subsection A failed to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
The trial judge did not err in the application of these statutory provisions. According to the record, plaintiffs held a recorded mortgage on the property from which B & C Wood removed the timber without the written consent of the mortgages. Consequently, they were entitled to recovery under the cited statutes.
Defendants argue that, under La.C.C. Article 1848, parole evidence was admissible to prove that the written act of sale was modified by an agreement giving the Moseleys the right to sell the timber without the consent of the Manghams. We note, first, that the Moseleys were not parties to this litigation and did not seek to reform or modify the deed. Second, there was no pleading to this effect by the defendants. Last, the record contains no evidence that the Moseleys were given permission to "clear cut" the tract. Consequently, this argument is without merit.
Equity Argument
La.C.C. Article 4 authorizes a resort to equity when "no rule for a particular situation can be derived from legislation ..."
This particular case is clearly covered by the cited statutory provisions. Consequently, there is no need to resort to equity.
Conclusions
For the reasons set forth, the judgment of the trial court is AFFIRMED, at appellants' costs.