585 So.2d 545 (1991)
FIRST SOUTH PRODUCTION CREDIT ASSOCIATION
v.
GEORGIA-PACIFIC and Rex Timber, Inc.
No. 91-C-0405.
Supreme Court of Louisiana.
September 9, 1991.
*546 Marc Stephen Whitfield, Taylor, Porter, Brooks & Phillips, for plaintiff-applicant.
Vance A. Gibbs, Brian F. Blackwell, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, for defendants-respondents.
CALOGERO, Chief Justice.
Plaintiff, First South Production Credit Association, seeks recovery of damages sustained as a result of the cutting and removal of timber from land subject to its mortgage. The cutting was performed by the defendants, Georgia-Pacific Corp. and Rex Timber, Inc., pursuant to valid timber contracts executed by the owner of the property, Del-Mar Properties, Inc., through its president, W. Lee Overton.
We granted plaintiff's writ to review the lower courts' conclusion that La.R.S. 9:5382 and La.R.S. 3:4278.1 do not allow a mortgagee to recover treble damages against a timber cutter whose operations are authorized by the landowner. Because we find that to be correct, we affirm the judgment granting defendant's motion for summary judgment, but only regarding the asserted claim for treble damages. For the reasons specified hereafter, however, we remand to the court of appeal for further proceedings to consider whether plaintiff's general claim for damages, implicitly asserted in its petition, included in its general prayer for damages, argued in the district court and court of appeal, but not addressed by either the district court or the court of appeal, is one which survives dismissal of the statutory claim for treble damages.
On April 4, 1985, W. Lee Overton, president and sole director and shareholder of Del-Mar Properties, executed a timber contract, which was unrecorded, with Georgia-Pacific Corp. on land owned by Del-Mar. Shortly thereafter, Georgia-Pacific began to cut and remove timber from the property, continuing its operations until approximately May 15, 1985. Meanwhile, on April 23, 1985, Overton, acting both as president of Del-Mar and in his individual capacity, granted to First South a collateral mortgage on the same property that was under contract to Georgia-Pacific. That mortgage was recorded in East Feliciana Parish where the property is located.
On June 10, 1986, Overton executed a second unrecorded timber contract with Rex Timber on the property subject to First South's mortgage. Consistent with that contract, Rex Timber cut and removed timber from approximately July 2, 1986 to September 3, 1986. First South claims that it became aware of the cutting conducted by Rex Timber some time in August or September of 1986. During settlement negotiations, it also learned of the earlier cutting by Georgia-Pacific.
On June 3, 1987, First South filed suit against Georgia-Pacific and Rex Timber *547 seeking damages for all timber cuttings performed without its written consent after its mortgage was recorded on April 23, 1985. In their answer, the defendants asserted that their operations were conducted pursuant to valid contracts with the owner of the property. They also filed a third party demand against Overton and Del-Mar demanding indemnity and/or contribution. Overton and Del-Mar raised an exception of no cause of action which was granted.[1] Thereupon, Georgia-Pacific and Rex Timber filed a motion for summary judgment. The district court granted the motion, and the court of appeal affirmed, 572 So.2d 218. First South now asks this Court to reverse the lower court ruling dismissing its suit.
In its petition, First South alleged that under the provisions of La.R.S. 9:5382 and La.R.S. 56:1478.1 (now 3:4278.1), it was entitled to recover three times the fair market value of the timber cut by the defendants. La.R.S. 9:5382 provides:
The holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person who, without the written consent of the mortgagee, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself or another, any trees, buildings, or other immovables covered by the mortgage.
Recovery by the mortgagee may not be for more than the unpaid portion of the secured indebtedness, plus interest, advances, court costs, and attorney's fees, provided such recovery may be had severally or jointly with the mortgagor land owner.
La.R.S. 3:4278.1 provides in part:
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed. However, the provisions of this Section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.

D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor. (Emphasis added).
These statutes have been construed together only once prior to this case. In Mangham v. B & C Wood Co., Inc., 561 So.2d 822 (La.App. 2d Cir.), writ denied, 566 So.2d 984 (La.1990), the Second Circuit Court of Appeal applied the provisions to a similar situation, in which the owner of property subject to a recorded mortgage had authorized timber cutting on the property. The timber company conducted cutting operations in accord with the owner's authorization, but failed to obtain the consent *548 of the mortgagee. The court held that under the provisions of La.R.S. 9:5382 and La.R.S. 3:4278.1, the mortgagee was entitled to recover treble damages (limited to the unpaid portion of the mortgage plus attorney's fees and costs) against the timber cutter. The plaintiff urges us to follow that decision here.
In the absence of clearer evidence of legislative intent to create such an action, we do not agree that the wording of the two statutes can be read to allow a mortgagee to recover treble damages against a timber cutter whose actions are authorized by the owner of the property. La.R.S. 3:4278.1 and La.R.S. 9:5382 are punitive statutes. In Gibbs Constr. v. Dept. of Labor, 540 So.2d 268 (La.1989), this Court stated that "statutes which authorize the imposition of a penalty are to be strictly construed" and "not construe[d] ... as extending powers not authorized by the letter of the law...." Id. at 269; see also Subdivision Planning Eng'rs, Inc. v. Manor Devel. Corp., 349 So.2d 247 (La. 1977); Morgan v. Fuller, 441 So.2d 290, 296 (La. App. 2d Cir.), writ denied, 443 So.2d 596 (La.1983) (statute manifests a legislative intent to impose a severe penalty [treble damages] upon those who flagrantly disregard the property rights of timber owners); Jordan v. Stevens Forestry Servs., 430 So.2d 806 (La.App. 3d Cir. 1983).
La.R.S. 9:5382 grants a mortgagee the "same rights, privileges, and actions" against a timber cutter as those possessed by the owner of the property. We interpret this provision to mean that a mortgagee can assert a claim against a timber cutter under this statute only if the statutory claim is available to the landowner at the time the timber is cut. Under La.R.S. 3:4278.1(C), the owner or legal possessor of the trees can recover treble damages against a timber cutter who even in good faith cuts and removes trees from the owner's property without his consent. However, "cutting operations within an area covered by a contract or agreement with the owner" are excluded from that section's application. In this case, Georgia-Pacific and Rex Timber acted pursuant to contracts with the property owner, Del-Mar. Del-Mar therefore has no claim against the timber companies under La. R.S. 3:4278.1, nor, as a consequence, does its mortgagee, First South. The plaintiff's first assignment of error regarding the treble damages claim is without merit. We therefore will affirm the trial court's summary judgment dismissal of First South's treble damages claim, while expressly overruling Mangham v. B & C Wood Co., Inc., 561 So.2d 822 (La.App. 2d Cir.), writ denied, 566 So.2d 984 (La. 1990).
In its second assignment of error, First South contends that the lower courts erred in dismissing its case entirely, simply upon finding the absence of a cause of action against the timber companies under La. R.S. 9:5382 and La.R.S. 3:4278.1. It contends that, throughout the proceedings below and in its brief to this court, it has asserted its entitlement to recover "under a variety of legal theories and assorted causes of action," none of which were addressed by either the district court or the court of appeal.
The lower courts should indeed have considered First South's alternative arguments or theories of recovery. Louisiana's Code of Civil Procedure establishes a system of fact pleading. As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the "theory of the case" doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished. See La.C.C.P. art. 862; Cox v. W.M. Heroman, & Co., 298 So.2d 848 (La.1974); Royal Furniture Co. of Baton Rouge v. Benton, 260 La. 527, 256 So.2d 614 (La. 1973).
In this case, First South alleged in its petition that it was the holder of a recorded mortgage on property from which timber was removed without its consent by a third party which had an unrecorded contract with the landowner. It further alleged that as a result of the unauthorized cutting, it suffered a number of particularized damages, including the loss of the fair *549 market value of the timber, loss in value of the mortgaged property, the cost of reforestation, and loss of aesthetic value. A fair reading of First South's petition is that it is seeking any damages for the cutting and removal of the timber to which it may be entitled under the facts asserted. That claim is not limited by the specific reference in the petition to La.R.S. 9:5382 and La.R.S. 3:4278.1; a demand for treble damages does not foreclose the plaintiff's right to receive a smaller damage award to which he may be legally entitled.
The defendants argue that First South's assertion of other causes of action in its memorandum in opposition to their motion for summary judgment was untimely or unfairly prejudicial because they did not receive a copy of the memorandum until the day of the hearing in the district court. The defendants rely on the recent decision of T.L. James & Co. v. Kenner Landing, Inc., 562 So.2d 914 (La.1990), in which this Court held that when a plaintiff's failure to request a particular form of relief prejudices the presentation of the defense, a court may restrict the plaintiff to the relief prayed for. That case, however, is easily distinguished from the one before us. In T.L. James & Co., the state intervened in a suit, seeking royalty payments on material removed by a dredging company from the Mississippi River bottom. The court of appeal reversed the trial court, finding that the state was entitled to royalties, and then refused to affirm the judgment as an award for damages because the state had not demanded that relief in its pleadings. This Court affirmed on the modified grounds that the state

not only failed to demand this relief in its pleadings but also acted inconsistently with such relief at every stage of the trial proceedings and thereby improperly and substantially prejudiced the other parties in the preparation and assertion of potential defenses. From the declarations of the state's petition of intervention, answers to interrogatories, pretrial statement, and oral pretrial stipulation, as well as the probative tendency of the state's evidence, plus the absence of any express or implied demand for damages prior to or during trial, the dredging company reasonably could have concluded that it needed to defend only against a suit to collect royalties.
Id. at 918 (emphasis added).
In contrast here, First South included a general prayer for damages in its petition, cited its alternative theories of recovery in its response to the defendants' pretrial motion for summary judgment, and argued its alternative theories at the hearing in the district court. The defendants did not choose at that time to object or respond to the plaintiff's assertions, or to seek to continue the hearing on the motion for summary judgment, or to file affidavits, supplemental affidavits, or a supplemental memorandum in support of their motion for summary judgment. We therefore conclude that the defendants' arguments regarding the timeliness of the plaintiff's assertion of its alternative theories in its opposition to summary judgment and alleged prejudice to the defendants are without merit.
The plaintiff's alternative argument alleges that First South has a right to recover general damages from the timber companies even if it is not entitled to treble damages. In its petition, the plaintiff argues that its encumbrance of the land gives it a right in the component parts of the land, including the timber.[2] First South contends that it had a right in the standing timber which was cut and removed by the defendants from the mortgaged property, and a corresponding right to monetary damages from the defendants.[3]
*550 The issue which prompted our granting this writ was the court of appeal's ruling on the treble damages claim. Because the court of appeal did not consider plaintiff's alternative claims and/or alternative arguments (in support of a general claim for damages), we deem it preferable to remand to the court of appeal for consideration of those claims and contentions.

DECREE
For the foregoing reasons, the judgment of the court of appeal is affirmed with regard to the summary judgment dismissal of plaintiff's treble damages claim under La.R.S. 9:5382 and La.R.S. 3:4278.1. The judgment of the court of appeal affirming the district court's summary judgment dismissal of plaintiff's alternative claims for general damages is reversed and this case is remanded to the court of appeal for further proceedings to consider those claims and contentions.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE COURT OF APPEAL.
NOTES
[1] The trial court held that La.R.S. 9:5328 and La.R.S. 3:4278.1 "do not provide a cause of action against a land owner by the holder of a conventional mortgage for the cutting of timber." That decision was appealed by First South, Overton, and Del-Mar, but those appeals were stayed as a result of the bankruptcies of Overton and Del-Mar and are not at issue in this case. Whatever happens regarding those appeals, the issue of whether a mortgagee has a cause of action against a landowner is not relevant to the timber companies' third party claim against their vendor landowner posed in the alternative in their answer to the mortgagee's suit against the timber companies.
[2] La.C.C. art. 463 establishes that standing timber is a component part of the land when the timber belongs to the owner of the land. La. C.C. art. 462 provides that both the land and its component parts are immovables. Regarding the mortgagee's right in the property, La.C.C. art. 3282 provides that the mortgage is a real right which is indivisible and prevails over all portions of the immovable and follows the property into the hands of third parties.
[3] The plaintiff alleges that La.C.C. art. 3397 and La.C.C. art. 3399 give First South the right to follow the cut timber into the defendants' hands and/or to recover monetary damages. The plaintiff's claim for monetary damages also fairly raises an argument that First South may be entitled to claim general damages on any legal basis, including La.C.C. art. 2315 and tortious interference with contract.