[No. 41982.   En Banc.   October 5, 1972.]

SPOKANE METHODIST HOMES, INC., *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent,* JOSEPH E. LOISELLE, *Petitioner.*

*Fredrickson, Maxey, Bell & Allison,* by *Leo H. Fredrickson,* for petitioner.

*Witherspoon, Kelley, Davenport & Toole,* by *Ned M. Barnes,* for respondent Spokane Methodist Homes, Inc.

*Slade Gorton, Attorney General,* and *Michael E. Donohue, Assistant,* for respondent Department of Labor and Industries.

ROSELLINI, J.—The petitioner, Joseph E. Loiselle, was employed by the respondent, a charitable corporation operating a retirement home for elderly people. On October 25, 1967, he was injured when a furnace which he was tending in the basement of the home exploded. He filed a claim with the Department of Labor and Industries, which denied that he was covered under the Industrial Insurance Act; but on appeal to the Board of Industrial Insurance Appeals, his claim was reinstated. The employer appealed to the superior court, which affirmed the holding of the board. A further appeal, taken by the employer to the Court of Appeals, Division Three, culminated in a reversal of the superior court and an affirmance of the decision reached by the director of the Department of Labor and Industries. 4 Wn. App. 598, 483 P.2d 168 (1971).

It had been the contention of the petitioner, sustained by the Board of Industrial Insurance Appeals and the superior court, that this court, in abandoning the doctrine of charitable immunity in *Friend v. Cove Methodist Church, Inc.,* 65 Wn.2d 174, 396 P.2d 546 (1964) and *Pierce v. Yakima Valley Memorial Hosp. Ass'n,* 43 Wn.2d 162, 260 P.2d 765 (1953), had also reversed its interpretation of the Industrial Insurance Act, rendered in *Thurston County Chapter, American Nat'l Red Cross v. Department of Labor & Indus.,* 166 Wash. 488, 7 P.2d 577 (1932). The Court of Appeals, on the other hand, held that those decisions purported to affect and did in fact abrogate only the common-law doctrine of charitable immunity, and did not alter any statute or statutory interpretation theretofore rendered by this court.

We granted the employee's petition for review upon the assumption that the question presented in the case is one of wide public concern. However, after the granting of the petition, it was brought to our attention that the legislature in Laws of 1971, 1st Ex. Sess., ch. 289, §§ 1 through 3, had amended RCW 51.12 to include within the coverage of the act paid employees of charitable institutions. Thus the impact of our decision upon the rights of employees in this state will not be extensive, and its significance lies largely in its reaffirmation of certain rules of statutory construction.

Rockwood Manor is owned and operated by Spokane Methodist Homes, Inc., a division of the United Methodist Church. Once an applicant is admitted, he is admitted for life. The applicant pays a basic fee for the right to live in the unit of his choice. He is charged a service fee based upon the cost of operation. The monthly service fee entitles the resident to his meals, with dietary supervision, weekly maid service, telephone exclusive of long distance calls, laundry for bed linen and towels, and also entitles him to 10 days of infirmary in each calendar month on a noncumulative basis without additional charges. The home provides a central dining room. Residents are served breakfast from 7:30 to 9 a.m., lunch from 11:30 a.m. to 1 p.m., and dinner from 5:30 to 7 p.m. An entertainment program is provided, which includes motion pictures, musical programs and speakers of various kinds, and is under the control of the residents. There are vesper services each Sunday afternoon. Recreational therapy is also provided.

Rockwood Manor operates a 30-bed infirmary which is located upon the premises. It is licensed under state law as a nursing home. It provides typical nursing service which includes supervision by registered nurses.

If a resident becomes bedridden he is provided full care for the same service fee. The additional cost of providing services in the infirmary is absorbed by the corporation.

At present there are approximately 249 residents. Three of the present residents are on public welfare and 69 other

residents do not pay the full monthly fee. The service fee is $170 per month and if an individual who is a resident cannot pay the service fee, it is paid out of the corporate funds or limited endowment funds.

Rockwood Manor has never made a profit. The purpose of the corporation is to provide elderly persons, including those without adequate means, with housing facilities and services designed to meet their physical, social and psychological needs on a nonprofit or charitable basis.

Rockwood Manor is basically a retirement home with an infirmary facility for elderly people. It is substantially different from an apartment house in that it has an infirmary, a common dining area, and common social and religious activities. Only retired persons are eligible for admission. It is unlike a condominium in that there is no common ownership of hallways and other common areas, and, more importantly, residents do not own their units.

It is fundamental that the rules of common law which are court-made rules, can be changed by the court when it becomes convinced that the policies upon which they are based have lost their validity or were mistakenly conceived. It was this principle which led to our rejection of the doctrine of charitable immunity in *Friend v. Cove Methodist Church, Inc., supra,* and *Pierce v. Yakima Valley Memorial Hosp. Ass'n, supra.* We found that experience had proved invalid the assumption that the courts should subsidize charitable institutions, at the expense of their employees, by denying such employees the right to recover for wrongful or negligent acts of their employers, or their agents or servants, resulting in injury to those employees. The immunity that we dealt with there was a common-law immunity from a duty imposed by the common law. We were not concerned with the interpretation of any statute.

On the other hand, in the earlier case of *Thurston County Chapter, American Nat'l Red Cross v. Department of Labor & Indus., supra,* we were solely concerned with the interpretation of a statute—a statute which granted rights not provided for in the common law. This statute

expressed a legislative policy that all employees in certain industries defined as extrahazardous should be entitled to compensation in the event they were injured in the course of their employment, regardless of the fault of the employer. The employer was relieved of his common-law liability for tortious injuries to his employees and in its place was substituted a duty to pay insurance premiums which would constitute his proportionate share of the cost of compensation for injuries suffered by those employees covered by the act.

It was this legislation which this court was called upon to interpret, to decide whether the legislature intended that charitable organizations should fall within its coverage. Such organizations were not expressly covered, and this court found a legislative intent to cover only profitmaking "industries." This conclusion flowed both from reading the act as a whole and from reasoning that, since at common law charitable organizations were not liable for the torts of their agents except for failure to exercise reasonable care in their selection, if the legislature had intended to bring such organizations within its provisions, "it . . . would have said so in plain terms." 166 Wash. at 493.

That interpretation was placed upon the act in 1932. Subsequently, in 1945, the legislature amended the act to extend its benefits to employees of charitable and nonprofit institutions. Laws of 1945, ch. 89, p. 243. Upon technical grounds, this act was declared unconstitutional in *Swedish Hosp. v. Department of Labor & Indus.*, 26 Wn.2d 819, 176 P.2d 429 (1947). No further attempt was made by the legislature to amend the act in this respect until 1971.

Consequently, the court must recognize that the legislature accepted its interpretation, rendered in 1932, as a correct reading of the act. *Nyland v. Department of Labor & Indus.*, 41 Wn.2d 511, 250 P.2d 551 (1952). It is the theory of the petitioner that if the court makes a change in the common law, any statute which was enacted with the existing rule of common law in mind, is automatically amended to conform to the new rule adopted by the court.

He has cited no authority for this proposition, and we think that none exists. The legislature may change the common law. However, it is not the prerogative of the courts to amend the acts of the legislature. *Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970).

■ At the time of the petitioner's accident, the respondent was not required and had not been required to pay industrial insurance premiums. The department as well as the legislature had consistently accepted the court's interpretation of the act.

We conclude that the petitioner was not covered by the Industrial Insurance Act at the time of his accident. What rights he may have had under the common law are not at issue in this action.

There is some contention that the record does not conclusively show that respondent is a charitable corporation. Our examination of the record discloses that articles of incorporation of respondent, together with the statement of the Secretary of State, establishes that Rockwood Manor is a nonprofit, charitable organization and, as such, is still officially recognized by the state as a charitable institution. The articles of incorporation state that the corporation is expressly authorized to provide and maintain a home for the elderly people and that it is to be a nonprofit, charitable organization. Article 2(a) provides elderly persons are eligible, "including those who lack adequate financial means." Article 2(f) precludes the corporation from making a profit and insures that upon dissolution "the corporation's assets shall be distributed exclusively for charitable, religious, educational or scientific purposes."

In addition, the Internal Revenue Service of the United States Treasury Department has conferred upon the Spokane Methodist Homes, Inc., a completely charitable status, and Rockwood Manor has never made a profit.

The petitioner suggests that the living arrangements provided in this retirement "home" fall within the definition of an "apartment house" and are therefore covered expressly in RCW 51.12.010. Assuming that, in spite of the predomi-

nantly communal nature of the accommodations in question, there is sufficient evidence of the existence of independent housekeeping facilities to bring the home within the definition of an apartment house, the result of this opinion is not altered thereby. This is so because the description which is given to the type of living arrangements provided does not alter the charitable nature of the respondent's undertaking.

The holding of this court in *Thurston County Chapter, American Nat'l Red Cross v. Department of Labor & Indus.*, 166 Wash. 488, 7 P.2d 577 (1932), was that the legislature intended to cover only profitmaking businesses or industries and did not intend to include charitable undertakings within the scope of the act. If the operation of the home is not a profit-making venture, but rather a charitable undertaking, the act as it existed when the accident giving rise to this action occurred did not provide coverage for the respondent's employees, regardless of whether the living accommodations provided were boarding rooms, apartments or hospital rooms. We find no merit in this contention of the petitioner.

The judgment of the Court of Appeals is affirmed.

HAMILTON, C.J., HUNTER, NEILL, and UTTER, JJ., concur.

FINLEY, J., concurs in the result.

WRIGHT, J. (dissenting)—I in no way disagree with the majority view that abrogation of the doctrine of charitable immunity does not thereby bring charitable institutions under the workmen's compensation laws. Charitable immunity is a rule of tort liability created by judicial decision, which could be, and was, abrogated by judicial decision. Workmen's compensation is statutory, created by statute, governed by statute and can only be extended by statute.

In the case of *Thurston County Chapter, American Nat'l Red Cross v. Department of Labor & Indus.*, 166 Wash. 488, 7 P.2d 577 (1932), this court said the workmen's compensation act did not apply to charitable organizations. That case,

however, was vastly different from the case at bar. There was not a true employer and employee relationship. A fund was raised by popular donations, money was placed in the care of the Thurston County Chapter and was used to provide food, clothing and medical services to the value of $2.50 per day for men who would work under the direction of the county or certain municipalities within the county. The work was on city streets, county roads or public parks. Neither the county nor the municipalities paid anything for the labor and the Thurston County Chapter received nothing. That case, therefore, had no similarity to the instant case.

My main reason for dissenting, however, is that in this case, petitioner, Joseph E. Loiselle, was specifically covered by the act. He was a maintenance man employed in an apartment house and as such, he was covered by RCW 51.12.010. An "apartment house" has been defined in *Creedon v. Lunde*, 90 F. Supp. 119, 120 (W.D. Wash. 1947), as follows:

[A]ccording to Webster's New International Dictionary, . . .

An apartment house . . . is defined as follows: "A building comprising a number of suites designed for separate housekeeping tenements, but having conveniences such as heat, light, elevator service, etc., furnished in common."

In *Konick v. Champneys*, 108 Wash. 35, 40, 183 P. 75, 6 A.L.R. 459 (1919), we said:

The legal status of the owner of an apartment house is not essentially different from that of the owner of office or business buildings generally. Such a house has been defined as a building arranged in several suites of connecting rooms, each suite designed for independent housekeeping, but with certain mechanical conveniences, such as heat, light or elevator services, in common to all families occupying the building.

An apartment house is not the less an apartment house because it limits its occupants to a given class or group of people. Here, it is elderly and retired persons. Likewise, an

apartment house does not lose its character as such if it offers more services than some other apartment house might offer. Each standard apartment in Rockwood Manor contains 300 square feet of space with a living room, wardrobe and bathroom. Other options include more space and kitchen facilities—at an increased cost. The price charged the tenant is directly in proportion to the space occupied.

One of the reasons advanced for distinguishing between Rockwood Manor and a conventional apartment house is the purchase by the tenant of a certain space, followed by the payment of a stated fee each month. Therein the operation of Rockwood Manor is similar to the type of operation known as a condominium.

A condominium is generally deemed to be an apartment house. The act, RCW 64.32, entitled "Horizontal Property Regimes Act (Condominiums)," contains the word "apartment(s)" 157 times and in 23 of the 28 sections. The entire context of the chapter makes it plain the legislature considered a condominium to be an apartment house. Of course, there can be office buildings and other structures organized as condominiums, but by far the most common condominium is the apartment house condominium. Another statute which equates "apartment" with "condominium" is RCW 32.04.025. Certainly the common understanding is that condominium is a kind of apartment house.

The furnishing of such things as a central location for social activities, and other central facilities, does not prevent the facility from being an apartment house. There has grown up in recent times a number of special type apartment houses. Some cater primarily, as does Rockwood Manor, to older people. Some are designed primarily to appeal to the younger people and provide recreational facilities such as a swimming pool and other central facilities. They are all, nevertheless, apartment houses.

The character of Rockwood Manor as an apartment house is, at least in part, a fact question. The Board of Industrial Insurance Appeals and the trial court found it to be an apartment house. That finding was not considered by

the Court of Appeals. The findings of the board are prima facie correct. RCW 51.52.115; *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 401 P.2d 982 (1965).

Rockwood Manor being an apartment house within the meaning of RCW 51.12.010, it matters not who owns it.

For the reasons stated, I would reverse the Court of Appeals and affirm the trial court.

HALE and STAFFORD, JJ., concur with WRIGHT, J.