430 So.2d 806 (1983)
Clarence H. JORDAN, Plaintiff-Appellee,
v.
STEVENS FORESTRY SERVICES, INC., Defendant-Appellant.
No. 82-779.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
*807 Trimble, Randow, Percy, Wilson & Foote, J. Michael Percy, Alexandria, for defendant-appellant.
Self & Burkett, Don M. Burkett, Many, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
CUTRER, Judge.
Clarence H. Jordan sued Stevens Forestry Services, Inc., for damages sustained when a controlled burn by Stevens' employees got out of control and burned trees on 120 acres of Jordan's land in Sabine Parish, Louisiana. Jordan sought, and a jury awarded, treble damages under LSA-R.S. 56:1478.1. Stevens does not question the jury's determination of liability and appeals only the treble damages portion of the judgment entered below. We reverse.

FACTS
By way of introduction, we observe that Stevens Forestry Services, Inc. (Stevens) is a professional timber management firm which has been in operation more than 25 years. Stevens manages approximately 26,000 acres of timberland in Sabine Parish, primarily for the Mitchell and Bailey families (M & B). Jordan owns 137 acres of forest in Sabine Parish. Jordan's tract is irregular in shape and is bordered on three sides by M & B holdings.
On the morning of March 17, 1971, two Stevens employees, Bill Nixon and Randy Woodward, were engaged in a "controlled burn" on M & B property at a point approximately one-half mile southwest of Jordan's property.[1] Mr. Nixon had over fifteen years of experience doing controlled burns. After establishing a perimeter of roads, creeks, previously burned areas and freshly plowed fire lanes, several fires were set. At this time the wind was blowing lightly from the west. Nixon, Woodward and Jimmy Hughes, an employee of Boise Southern called as a witness by Jordan, testified that during the early afternoon the wind suddenly shifted, blowing from the south. According to Nixon, this wind shift was unexpected and uncharacteristic of the normal weather patterns in the area.
About the time the wind began changing the tractor which Nixon had used for plowing fire lanes broke down. While trying to locate a telephone to summon mechanical help Nixon met Luther Sandel, a resident of the area who owned property adjacent to the M & B tract being burned. Sandel informed Nixon that a fire had jumped a local road and was burning on Jordan's land. Sandel said Nixon was surprised and concerned when told of this development. Nixon asked Sandel to take him to a telephone so that fire fighting assistance could be contacted. In the meantime, other people in the area had also spotted the smoke, blowing toward the north, and reported the *808 fire to the authorities. When the Louisiana State Forestry Commission firefighters arrived at the scene, a crew from Boise Southern, a forest products company with holdings in the area, had already quelled the blaze. By the time the fire was extinguished a continuous burn pattern stretched from Nixon's original setting point, across another M & B tract, into Jordan's land.

TREBLE DAMAGES UNDER LSA-R.S. 56:1478.1
The only issue before this court is the appropriateness of the award of "three times the fair market value of the timber destroyed, less salvage value."[2]
Revised Statute 56:1478.1 provides, in pertinent part:
"A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.

B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed.

C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, market boundary lines, or outside of designated cutting area lines....." (Emphasis added.)
Subsections B and C of this statute are punitive; they must be strictly construed. Defendant will only suffer the severe penalty of treble damages when the evidence clearly establishes that the statute has been violated. Smith v. Myrick, 412 So.2d 677 (La.App. 2nd Cir.1982); Shaffett v. Vicks, 385 So.2d 419 (La.App. 1st Cir. 1980).
A jury verdict is to be given great weight. However, an appropriate basis for reversing a jury is found when the jury's "application of the law is clearly erroneous." Broussard v. Missouri Pac. R. Co., 376 So.2d 532 (La.App. 3rd Cir.1979). The jury was correctly charged by the trial judge; its imposition of treble damages in the circumstances of this case was clearly erroneous.
Jordan argues that he was entitled to treble damages under either, or both, of Subsection B or C above. Jordan maintains that Stevens' use of the fire, under the prevailing conditions, amounted to such gross negligence that the jury was justified in finding that Stevens acted "willfully and intentionally" in destroying Jordan's timber. Alternatively, Jordan argues that Subsection C of R.S. 56:1478.1 was ambiguous in that the general provision speaks of trees "cut, felled, destroyed or removed" while the penalty exception only mentions trees "cut or removed." Jordan would have us read into the penalty provision of Subsection C the word "destroyed." Each of these arguments will be considered in light of the record.

PARAGRAPH B
We do not agree that the level of Stevens' negligence amounts to willful and intentional acts. Before beginning his burn Nixon ascertained there were barriers to *809 prevent the fire from spreading uncontrollably. The eastern boundary of the fire area consisted of a cleared pipeline right-of-way. On the west a creek served as a natural fire break. To the south lay a tract of land owned by the International Paper Company which had been similarly burned approximately two weeks earlier; the fire would die for lack of fuel if it escaped to the south. On the northern end Nixon and Woodward plowed new fire lanes. Under normal conditions these natural and artificial barriers would serve to totally contain the fire Nixon ignited.
The record indicates that the enclosed M & B tract, as described above, contained between 1,100 and 1,200 acres. Nixon and several other professional foresters, some called by Jordan, testified that a controlled burn could safely be done on a tract of this size. While some witnesses indicated that Boise Southern Company generally used crews of at least three men to conduct controlled burning operations these same witnesses said that under the proper conditions two men could adequately handle such a burn. On the day in question both Nixon and Woodward were at the scene monitoring the fire line.
On the night before the fire and again on the morning of the fire Nixon checked the local weather conditions. Nixon, with his fifteen years of experience, decided the conditions were acceptable to undertake the burn. Nixon and Woodward, the only witnesses who were actually at the site of the initial setting of the fire, both stated that the wind was blowing lightly out of the west on the morning of March 17, 1981. The normal weather pattern in the area at that time would have called for a clockwise rotation, if any, in the wind direction, according to Nixon. At some point after the fire was set the wind suddenly shifted, in a counter-clockwise direction, and began blowing hard from the south. Jimmy Hughes specifically recalls the "severe change in the wind" and Sandel stated that when he noticed the smoke it was blowing to the north.
The jury necessarily concluded that this northerly wind pushed Nixon's fire over the plowed fire lanes, through approximately one-half mile of M & B timber and ignited Jordan's trees. This fact, and the liability of Stevens based on this fact, has not been questioned. However, we find that Subsection B of the statute is not applicable because the record does not clearly establish any willful or intentional acts on the part of Stevens which resulted in the destruction of Jordan's trees.[4]

PARAGRAPH C
Concerning Subsection C we likewise find the provision inapplicable to the instant case. Part C of the statute contains a very specific limitation on the imposition of treble damages. It is only where trees are "cut or removed" by a good faith trespasser "across ownership lines" that the penalty will be imposed. Stevens neither cut nor removed any of Jordan's trees.
Subsection C is principally aimed at tree pirates who cross clearly marked ownership lines and cut timber or remove timber. The punitive nature of this part penalizes a person's actions for their own pecuniary gain who otherwise would only pay a landowner or legal possessor the value of the trees taken. With Subsection C in force, such a trespasser is dissuaded from *810 taking another's timber for his own gain because he will no longer break even when he is caught. Subsection C does not apply to Stevens in this case. Having neither cut nor removed Jordan's trees, Stevens has not been shown to be in clear violation of the statute and treble damages under this section are inappropriate.[5] Having come to this conclusion, we shall amend the judgment of the trial court by reducing the award to the stipulated, actual damages of $15,849.06.
For the reasons assigned, the judgment of the trial court is amended by reducing the amount of the award to $15,849.06. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are to be paid by Clarence H. Jordan, plaintiff-appellee.
AMENDED AND AFFIRMED.
NOTES
[1] A "controlled burn" involves the use of fire as a tool. Professional foresters intentionally set fires in the underbrush of stands of commercial timber; the fires serve two purposes: (a) destruction of undergrowth which competes with trees for nutrients in the soil; and (b) elimination of additional fuel in the event of a wild fire. The use of such controlled burning is an accepted practice in the timber industry.
[2] The jury was presented findings of fact. The jury signed and returned the following:

"WE THE JURY FIND FOR THE PLAINTIFF, CLARENCE H. JORDAN, IN THE AMOUNT OF $30,742.18
"MANY, SABINE PARISH, LOUISIANA, THIS 11TH DAY OF AUGUST, 1982."
The parties stipulated the actual damages as follows:

"1. Merchantable Timber Destroyed $10,064.00
 (Salvaged)---------------------- (2,614.94)
2. Pre-Merchantable Timber Destroyed 6,000.00
3. Cost to Restore Pre-Merchantable Timber 2,400.00
 Total Actual Damages --------------- $15,849.06"

We are unable to determine how the figure of $30,742.18 would be computed as representing treble damages in view of the stipulation. Because of our ultimate resolution of this case, however, we need not address this anomaly.
[4] There was much testimony, most elicited by Jordan, concerning various indexes. Witnesses mentioned a "fire index," a "burn index" and a "spread index." The obvious allusion intended was that any or all of these indexes would have put Stevens on notice that a controlled burn should not have been attempted that day and thus Stevens' action in doing a burn was grossly negligent, even unto being "willful and intentional." However, nowhere in the record are any of the indexes explained. It is impossible to tell what factors are used to arrive at an index, whether any of the indexes are generally accepted as determinative in the timber industry or even if the various terms used in fact refer to a separate index. It appears that at least two and possibly three separate figures are available. Without some authentication of the standard alluded to we cannot judge Stevens' conduct against them.
[5] We are aware of the case of Gewin v. Williamette Industries, Inc., 406 So.2d 730 (La. App. 3rd Cir.1981), in which this court stated:

"We conclude, as did the trial judge, that appellant was aware of the boundary between its property and the Gewin property and that appellant, even in good faith, is liable to Gewin for three times the fair market value of the trees cut, felled and destroyed or removed." (Emphasis added.)
The facts in Gewin establish that the defendant did cut and remove trees from Gewin's property. The decision in Gewin is imminently correct under LSA-R.S. 56:1478.1(C). Unfortunately, the above quoted statement seems to expand Subsection C by the inclusion of the emphasized words. That was not the intent of the court. Subsection C, being penal in nature, must be strictly construed as written. Trees merely destroyed across property lines, as in the case on appeal, are not included in the punitive provision.