[No. 85905-1.   En Banc.]
Argued November 15, 2011.     Decided May 31, 2012.

CERTIFICATION FROM THE UNITED STATES DISTRICT COURT, DISTRICT OF OREGON, PORTLAND, DIVISION IN

BROUGHTON LUMBER COMPANY, *Plaintiff*, v. BNSF RAILWAY COMPANY ET AL., *Defendants*.

620

*Shay S. Scott* (of *Haglund Kelley Jones & Wilder LLP*) (*Michael E. Haglund* and *Michael K. Kelley*, of counsel) (*Scott W. Horngren* of *American Forest Resource Council*, of counsel), for plaintiff.

*Thomas W. Brown* (of *Cosgrave Vergeer Kester LLP*) (*David P. Morrison* and *Kimberly R. Griffith*, of counsel); *Paul J. Lawrence* and *Gregory J. Wong* (of *Pacifica Law Group LLP*); *Seann C. Colgan* and *Paul R. Raskin* (of *Corr Cronin Michelson Baumgardner & Preece LLP*); and *Howard M. Goodfriend* (of *Smith Goodfriend PS*) (*Adam M. Schienvold* of *Eckert Seamans Cehrin*, of counsel), for defendants.

¶1 FAIRHURST, J. — This case[1] requires us to construe former RCW 64.12.030 (CODE OF 1881, § 602), the "timber trespass statute." *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 114, 942 P.2d 968 (1997). Plaintiff Broughton Lumber Company asserted a timber trespass claim against defendants BNSF Railway Company and Harsco Corporation in the United States District Court, District of Oregon, Portland Division, after a fire spread from BNSF's property and destroyed Broughton's trees. The district court certified to us the following question:

> Can a plaintiff recover damages under [former] RCW 64.12.030 for trees damaged by a fire that spreads from a defendant's neighboring parcel, where the alleged acts or omissions of the defendant were not directed at plaintiff's trees or property, and did not occur on plaintiff's property?[2]

Certification to Wash. State Supreme Ct. (Certification) at 2-3.

## I. FACTUAL HISTORY

¶2 The parties stipulated[3] to the following facts that constitute the record under RCW 2.60.010(4):

> This is a civil case brought by plaintiff against defendants.

---

[1] *Broughton* is a companion case to *Jongeward v. BNSF Railway*, 174 Wn.2d 586, 278 P.3d 157 (2012).

[2] We have reformulated the question. *See Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

[3] Broughton moved to supplement the record, but its motion was denied. *See* Letter Order Den. Appellant's Mot. to Suppl. R.

On September 20, 2007, a fire broke out along a railroad right-of-way following rail grinding operations jointly conducted by defendants on BNSF tracks near Underwood, Washington. Plaintiff owns 260 acres of property adjoining the railroad right-of-way. The fire spread to plaintiff's property and destroyed trees on the property. No employee or agent of either defendant was physically present on plaintiff's property at any time relevant to the start or spread of the fire or the damage to plaintiff's trees. Defendants have admitted that they were negligent in failing to prevent the spread of the fire from the right-of-way to plaintiff's property.

Certification at 2.

## II. PROCEDURAL HISTORY

¶3 Broughton sued BNSF and Harsco for real and personal property damage in federal district court. Among other claims, Broughton asserted a timber trespass claim for treble damages. The district court granted partial summary judgment dismissing Broughton's treble damages claim. *Broughton Lumber Co. v. BNSF Ry.*, No. 09-1110-KI, 2010 WL 4670479, 2010 U.S. Dist. LEXIS 119721 (D. Or. Nov. 9, 2010). After the United States District Court for the Eastern District of Washington certified to us similar questions in *Jongeward v. BNSF Railway Company*, 174 Wn.2d 586, 278 P.3d 157 (2012), the United States District Court, District of Oregon, Portland Division, submitted its certified question.

## III. ANALYSIS

¶4 Certified questions from federal court are questions of law that we review de novo. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010). We consider the legal issues not in the abstract but based on the certified record provided by the federal court. *Id.* (citing RCW 2.60.030(2)).

¶5 The meaning of a statute is a question of law we review de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31

P.3d 1155 (2001). In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

■ ¶6 The territorial legislature enacted the timber trespass statute in 1869 to (1) punish a voluntary offender, (2) provide treble damages, and (3) "discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred." LAWS OF WASH. TERR. 1869, ch. XLVIII, § 556, at 143; *Guay v. Wash. Natural Gas Co.*, 62 Wn.2d 473, 476, 383 P.2d 296 (1963). The statute contains two relevant sections. Former RCW 64.12.030 provides, "Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person, . . . against the persons committing such trespasses," the prevailing plaintiff is entitled to treble damages.[4] RCW 64.12.040 provides, "If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his or her own, . . . judgment shall only be given for single damages."

¶7 In 1877, the territorial legislature reenacted both former RCW 64.12.030 and RCW 64.12.040, retaining the original language, and the timber trespass statute became the law of Washington at statehood. *See* LAWS OF WASH. TERR.

---

[4] This is the text of former RCW 64.12.030 as it existed at the time of the fire. It reads in its entirety:

> Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the persons committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

1877, ch. XLVIII, §§ 607-08, at 125. The text remained unchanged until 2009, when the legislature amended former RCW 64.12.030 to clarify that treble damages are available for the unlawful cutting of Christmas trees.[5] LAWS OF 2009, ch. 349, § 4.

¶8 Because former RCW 64.12.030 and RCW 64.12.040 relate to the same subject matter, they must be construed together. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001). Former RCW 64.12.030 creates liability and imposes mandatory treble damages when a defendant cuts down, girdles or otherwise injures, or carries off a plaintiff's trees. RCW 64.12.040 serves as a mitigation provision. *See, e.g.*, *Smith v. Shiflett*, 66 Wn.2d 462, 463, 403 P.2d 364 (1965) ("This is another case of trespassing loggers cutting timber and seeking to avoid the statutory treble damages by urging that they did not know they were trespassing." (footnote omitted)). "Once a trespass is established [under former RCW 64.12.030], the burden shifts to the defendant to show it was not willful or reckless, but rather was casual or involuntary, or done with probable cause to believe the land was his own." *Hill v. Cox*, 110 Wn. App. 394, 406, 41 P.3d 495 (2002) (citing *Seattle-First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 197-98, 570 P.2d 1035 (1977)).

¶9 "Under the above sections, a recovery, whether of treble damages under the former, or single damages under the latter, can be had only for a trespass committed." *Tacoma Mill Co. v. Perry*, 40 Wash. 44, 47, 82 P. 140 (1905).

---

[5] The current version of RCW 64.12.030 reads:

Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

(Reviser's note omitted.)

In other words, to obtain damages under either former RCW 64.12.030 or RCW 64.12.040, a plaintiff must first establish that a defendant's conduct constitutes timber trespass. That is the first issue before us—whether the defendants' failure to prevent a fire from spreading constitutes timber trespass as contemplated by the statute. The second issue is whether the statute applies when a defendant has not physically trespassed onto a plaintiff's land. To resolve these issues, we look to the plain meaning of the statute, canons of construction, and Washington case law.

## A. Plain Meaning Analysis

¶10 If a statute's meaning is plain on its face, we must "give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. The plain meaning "is discerned from all that the Legislature has said in the statute." *Id.* at 11. Plain meaning may also be discerned from "related statutes which disclose legislative intent about the provision in question." *Id.* An examination of related statutes aids our plain meaning analysis " 'because legislators enact legislation in light of existing statutes.' " *Id.* (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)).

### 1. *Statutory text*

¶11 As noted above, former RCW 64.12.030 applies when a defendant shall "girdle or otherwise injure" a plaintiff's trees. Broughton contends that nothing in the plain language of the statute requires direct action, and we should not imply a requirement where none exists. According to Broughton, the phrase "otherwise injure" clearly functions as a catchall, third category of harm that makes a person potentially liable for treble damages whenever he or she unlawfully injures trees.

¶12 But Broughton's plain meaning analysis begins and ends with the phrase "otherwise injure." When read in

isolation, the phrase "otherwise injure" could conceivably be read to encompass a defendant's failure to prevent a fire from spreading. This reading is too limited, however, because a statute's plain meaning must be "discerned from *all* that the Legislature has said in the statute," not just two words. *Campbell & Gwinn*, 146 Wn.2d at 11 (emphasis added).

¶13 The legislature used the term "trespass/trespasses" three times to describe the conduct that triggers statutory liability. A proper plain meaning analysis therefore begins with the term "trespass." Our analysis of the term is informed by the common law. *See Suter v. Wenatchee Water Power Co.*, 35 Wash. 1, 6, 76 P. 298 (1904) (" '[I]t is plain that we are bound to consult the common law, and the classification of common-law actions, for the proper determination as to what the law-making power of this state had in mind when using the [term] "trespass." ' " (quoting *Hicks v. Drew*, 117 Cal. 305, 308, 49 P. 189 (1897))). A subsequent change in the common law does not impact our statutory analysis. *See Spokane Methodist Homes, Inc. v. Dep't of Labor & Indus.*, 81 Wn.2d 283, 287, 501 P.2d 589 (1972) (Just because "the court makes a change in the common law, [a] statute which was enacted with the existing rule of common law in mind, is [not] automatically amended to conform to the new rule adopted by the court."). We therefore do not consider the modern view of trespass, but the historical view. *See Bloomer v. Todd*, 3 Wash. Terr. 599, 615, 19 P. 135 (1888) ("The ordinary use of words at the time when used, and the meaning adopted at that time, is usually the best guide for ascertaining legislative intent.").

¶14 When the timber trespass statute was enacted, trespass[6] was classified into "two sorts:"[7] trespass on the case and trespass *vi et armis*. VI THE LAW-DICTIONARY 288

---

[6] "The writ of trespass was the original writ most commonly resorted to as a precedent." 1 JUDGE BOUVIER's LAW DICTIONARY 243 (12th ed. 1867). It originally supposed "a wrong to be done with force." VI THE LAW-DICTIONARY 288 (1811). But "in process of time," trespass was "extended as to include every species of wrong causing an injury . . . apparently for the purpose of enabling an action on the case

(1811). Trespass on the case was an act that was not immediately injurious or a culpable omission. *See, e.g.,* *Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 715, 709 P.2d 793 (1985). The plaintiff's resulting injury was indirect—consequential or collateral. *Id.* at 716. Trespass *vi et armis*, most often referred to as simply trespass, was "[a]ny unlawful act committed with violence, actual or implied, to the person, property, or rights of another." 2 JUDGE BOUVIER'S LAW DICTIONARY 608 (12th ed. 1867). Trespass was also described as a "direct trespass"—an act " 'done which is in itself an *immediate* injury to another's person or property.' " *Welch v. Seattle & Mont. Ry.*, 56 Wash. 97, 99, 105 P. 166 (1909) (quoting 3 BLACKSTONE COMMENTARIES 123 (Lewis' ed. 1902)). The plaintiff's resulting injury was " 'immediate, and not consequential.' " *Suter*, 35 Wash. at 7 (quoting *Roundtree v. Brantley*, 34 Ala. 544, 554 (1859)).

¶15 Because case and trespass actions triggered different statutes of limitations,[8] the direct/indirect distinction was often litigated. S*ee, e.g., id.* (" 'It is argued that trespass is a comprehensive term, which includes trespass on the case; and that this cause of action is a trespass on the case to real

to be brought in the King's Bench." 1 BOUVIER'S, *supra*, at 243. Trespass was then used to signify "[a]ny misfeasance or act of one man whereby another is injuriously treated or damnified." 2 BOUVIER'S, *supra*, at 608.

[7] There were only two sorts, but there were many forms. For example, trespass against realty, or trespass *quare clausum fregit*, was used "to recover damages for injuries to the realty consequent upon entry without right upon the plaintiff's land." 2 BOUVIER'S, *supra*, at 610. Such trespass was done "*by breaking the close.*" *Id.* at 609. But this type of limited trespass was clearly not intended here because the legislature used the phrase "such trespasses" to refer to the verbs "cut down, girdle or otherwise injure, or carry off." Former RCW 64.12.030.

[8] Trespass *vi et armis* triggered the three-year statute of limitations, while trespass on the case triggered the two-year, "catchall" statute of limitations. *Stenberg*, 104 Wn.2d at 715. For example, the defendant in *Suter* owned and operated an irrigation canal near the plaintiffs' property in Chelan County. Waters overflowed the canal and washed over the plaintiffs' land, cutting deep and wide ditches. Because the plaintiffs did not file their complaint until after the two-year statute of limitations had run, the issue was whether the defendant was potentially liable in trespass on the case. We applied the two-year statute of limitations, holding that the damage was consequential and no trespass. We later eliminated the direct/indirect distinction in *Stenberg* to "return to the original understanding" of the statutes of limitations. *Id.* at 721.

or personal property, which is embraced in the section under the term "trespass." ' " (quoting *Roundtree*, 34 Ala. at 554). Over time, "trespass on the case" "lost the peculiar character of a technical trespass." 1 Bouvier's, *supra*, at 243. "[T]he name was to a great extent dropped, and actions of this character came to be known as actions on the case." *Id.*

¶16 Applying these principles here, the territorial legislature might conceivably have used the term "trespass" to mean any misfeasance that results in injury to a plaintiff's trees. But based on the common understanding of the term "trespass" in 1869, it seems more likely that the legislature used the term "trespass" to mean direct acts causing immediate injuries, not culpable omissions causing collateral damage. *See* 2 Bouvier's, *supra*, at 609 (The term "trespass" was "used oftener" in a restricted signification.); *see also Rayonier, Inc. v. Polson*, 400 F.2d 909, 918 n.11 (9th Cir. 1968) (The "legislature clearly had particular evils in mind when it enacted the treble damage statute.").[9]

¶17 The legislature's use of verbs also suggests that the statute applies to direct acts that cause immediate, not consequential, injury. "Cut" means "to make a gash, incision, or notch" in "any body by an edged instrument, either

---

[9] We also note that the timber trespass sounds in tort and trespass is an intentional tort. *Birchler*, 133 Wn.2d at 115 (citing *Tacoma Mill*, 40 Wash. at 47). Contrary to the dissent's argument, the legislature's use of the phrase "casual and involuntary" does not transform an action for trespass into an action for negligence. RCW 64.12.040. An act is involuntary when it "is performed with constraint (*q.v.*), or with repugnance, or without the will to do it. An action is involuntary, then, which is performed under duress." 1 Bouvier's, *supra*, at 747. An "involuntary trespass" is not negligence; it is still a trespass. *Hawley v. Sharley*, 40 Wn.2d 47, 50, 240 P.2d 557 (1952). An act is "casual" when it "happens accidentally, or is brought about by causes unknown; fortuitous; the result of chance." Black's Law Dictionary 178 (1891). An accidental trespass is also not negligence; it is still a trespass. *Rogers v. Kangley Timber Co.*, 74 Wash. 48, 54, 132 P. 731 (1913). And an "[a]ccident may in some cases excuse a trespass." 2 Bouvier's, *supra*, at 609. This appears to be the intent of the legislature; by creating RCW 64.12.040 as a mitigation provision, it permitted defendants to argue that their trespasses were involuntary, accidental, or accomplished under a mistaken belief of ownership.

by striking, as with an ax, or by sawing or rubbing."[10] AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 295 (1853). "Girdle" means "to make a circular incision, like a belt, through the bark and alburnum of a tree, to kill it." *Id.* at 503. "Carry off" means "to remove to a distance." *Id.* at 177. Because these verbs describe direct acts, which formerly would have been characterized as trespass *vi et armis*, we cannot conclude that the legislature intended the statute to penalize indirect acts or omissions, particularly in light of the treble damages provision.

### 2. *The fire act*

¶18 Because a statute's plain meaning may also be determined from related statutes, BNSF and Harsco contend that the fire act, RCW 4.24.040-.060, is relevant to our analysis. According to the defendants, the fire act shows legislative intent that the timber trespass statute does not apply in this case.

¶19 The fire act was originally enacted in 1877 and is now codified as RCW 4.24.040-.060. It creates a cause of "action on the case" against a defendant who permits a fire to spread and damage a plaintiff's property. LAWS OF WASH. TERR. 1877, § 3, at 300; CODE OF 1881, § 1226; REM. REV. STAT. § 5647. The fire act applies when a defendant "for any lawful purpose kindle[s] a fire upon his or her own land" but fails to take "such care of it to prevent it from spreading and doing damage to other persons' property." RCW 4.24.040. The fire act also expressly preserves "[t]he common law right to an action for damages done by fires." RCW 4.24.060. Both the statutory claim under RCW 4.24.040 (for fires kindled "for any lawful purpose") and the common law claim preserved by RCW 4.24.060 (for "damages done by fires") allow only the recovery of single compensatory damages.

---

[10] "[W]hen an entire separation of the body is intended, it is usually followed by ... *down* ... or other word denoting such severance." AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 295 (1853).

¶20 But the fire act is only marginally helpful to our analysis. The territorial legislature could not have enacted the timber trespass statute in light of the fire act because the timber trespass statute predates the fire act. Further, the fire act does not apply in this case.[11] However, in a broad sense, the fire act does demonstrate the legislature's intent to impose liability for only single compensatory damages when property is destroyed by fire. *See, e.g., N. Bend Lumber Co. v. Chi., M.&P.S. Ry.*, 76 Wash. 232, 234, 135 P. 1017 (1913) (jury properly instructed as to fire act after a fire intentionally started on a railroad company's right of way, spread to plaintiff's property, and destroyed plaintiff's timber); *Burnett v. Newcomb*, 126 Wash. 192, 217 P. 1017 (1923) (fire act imposes liability where defendant starts a fire to destroy weeds on his property but negligently allows fire to spread and damage plaintiff's merchantable timber). It also demonstrates that the legislature intended fire damage to be recoverable through an "action on the case," rather than through a direct trespass action.[12] It also demonstrates that Broughton may sue the defendants under the common law.

¶21 The plain meaning of the timber trespass statute cannot be dispositively determined from the text of the statute or the fire act. The phrase "otherwise injure" could conceivably be read to encompass the defendant's failure to prevent the spread of a fire. But the legislature's use of the word "trespass," as understood at the time, strongly suggests that the legislature intended to punish only direct trespasses causing immediate injury, not culpable omis-

---

[11] *See Jordan v. Welch*, 61 Wash. 569, 112 P. 656 (1911). The *Jordan* defendant, a railway company, negligently permitted its engine to ignite a fire that spread and damaged the plaintiff's property. *Id.* at 570. The action was not within the terms of the fire act because the defendant did not purposely kindle the fire. *Id.* at 573.

[12] The legislature's decision to include the case language in the fire act does not demonstrate that the legislature purposely omitted the case language from the timber trespass statute. However, it does suggest that the legislature was aware of the direct/indirect distinction in the common law and knew how to use it to create statutory liability.

sions causing collateral damage. And while the fire act suggests that the legislature intended to impose only single compensatory damages when property is damaged by fire, the fire act does not conclusively preclude application of the timber trespass statute to negligently set fires.

## B. Interpretative Aids

¶22 If a statute remains ambiguous after a plain meaning analysis, it is appropriate to resort to interpretive aids, including canons of construction and case law. *Campbell & Gwinn*, 146 Wn.2d at 12.

### 1. *Canons of construction*

¶23 The timber trespass "statute is penal in its nature, not merely remedial. As such it should be strictly construed." *Bailey v. Hayden*, 65 Wash. 57, 61, 117 P. 720 (1911); *accord Birchler*, 133 Wn.2d at 110; *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 886, 289 P.2d 975 (1955); *Gardner v. Lovegren*, 27 Wash. 356, 362, 67 P. 615 (1902). Broughton concedes that our decisions require the statute to be strictly construed, but argues that the rule of strict construction applies only to the imposition of a higher measure of damages and not to the circumstances that give rise to liability. Broughton then cites *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 143 P.3d 590 (2006), for the proposition that remedial statutes must be liberally construed.

¶24 Broughton's argument fails. We have repeatedly held that the timber trespass statute is penal in nature and subject to strict construction. *See, e.g., Skamania Boom Co. v. Youmans*, 64 Wash. 94, 96-97, 116 P. 645 (1911); *accord Birchler*, 133 Wn.2d at 110; *Gardner*, 27 Wash. at 362. Our cases do not support Broughton's attempt to divide the statute into a penal portion and a remedial portion. *See, e.g., Gardner*, 27 Wash. at 362 ("Being, then, of a penal nature, it must be construed as other penal statutes are construed, viz., the intent to commit the trespass must

appear."). And because *Go2Net* interpreted Washington's Securities Act, chapter 21.20 RCW, not the timber trespass statute, it does not apply.

¶25 Further, because a plaintiff must bring a timber trespass claim under former RCW 64.12.030, the statute subjects every defendant to potential treble damages. *See, e.g., Shiflett*, 66 Wn.2d at 464-65 ("It is clear that treble damages will be imposed . . . under RCW 64.12.030, unless those trespassing exculpate themselves under . . . RCW 64.12.040."). As noted above, the burden is on the defendant to show mitigating circumstances. *See, e.g., Cox*, 110 Wn. App. at 406 (" 'Defendant Cox has failed to bring himself within the mitigation provision of the state timber trespass statute, RCW 64.12.040.' " (quoting Clerk's Papers at 692)). Because a plaintiff may not bring an action directly under RCW 64.12.040, the statute cannot reasonably be divided into a penal portion and a remedial portion. We therefore hold that the entire timber trespass statute is subject to strict construction, as we have held in the past. And, under a strict construction, BNSF and Harsco should not be subject to the severe penalty of treble damages without clear evidence that they violated the statute.

¶26 Next, a court must not interpret a statute in any way that renders any portion meaningless or superfluous. *Svendsen v. Stock*, 143 Wn.2d 546, 555, 23 P.3d 455 (2001). Broughton contends that a construction that excludes fire-damaged timber would "interpret[ ] the meaning out of the term 'otherwise injures' [sic] and its intended breadth." Pl.'s Reply Br. on Certified Question at 14. But the phrase "otherwise injure" has a separate meaning if it encompasses acts that are similar to cutting, girdling, or carrying off another's trees, such as spiking, poisoning, or drilling. A narrow interpretation does not violate this canon of construction, but a broad interpretation would break the rule. If the phrase "otherwise injure" were a catchall category of harm, encompassing every conceivable act or omission that collaterally injures trees, the terms "cut down," "girdle," and

"carry off" would have no separate meaning and would be rendered superfluous.

¶27 Finally, we avoid interpretations "that yield unlikely, absurd or strained consequences." *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). Broughton correctly claims it would be absurd if the statute did not punish "a defendant, who, inches from their [sic] property line, shoots fireworks into a neighboring tree farm intending to start a fire."[13] Pl.'s Opening Br. on Certified Question at 29. Statutory violations involve trespass to a tree, not trespass to the land on which the tree grows. It would be absurd to allow a trespasser to escape the statute's reach simply because he or she was not physically located on a plaintiff's property. And because, as noted above, the legislature intended the statute to "punish a voluntary offender," it would also violate the clear purpose of the statute. *Guay*, 62 Wn.2d at 476. Because the statute focuses on conduct, not location, the statute was certainly intended to apply to Broughton's hypothetical defendant, as well as to a defendant who stands on her own property and sprays herbicide on her neighbor's hydrangeas.

### 2. *Case law*

¶28 If a statute remains ambiguous after a plain meaning analysis, it is also appropriate to refer to relevant case law. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶29 Broughton notes that Washington case law has abandoned the distinction between direct and indirect trespass. Based in part on this change, Broughton contends that the timber trespass statute should expand to comport with the modern view of trespass. To support this claim,

---

[13] In a related argument, Broughton also points to the physical entry requirement in the waste statute, RCW 4.24.630, to contend that the legislature did not intend to include a physical entry requirement in the timber trespass statute. However, this line of reasoning is unpersuasive. Although the legislature is deemed to intend a different meaning when it uses different words, this principle applies only to different terms in the same statute. *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005).

Broughton first cites *Birchler*, 133 Wn.2d at 106, a case recognizing emotional distress damages for timber trespass. Broughton also cites to cases not involving the timber trespass statute: *Zimmer v. Stephenson*, 66 Wn.2d 477, 403 P.2d 343 (1965) (spark from defendant's tractor burned neighbor's wheat crop); *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 709 P.2d 782 (1985) (smelter's pollutants trespassed on neighbor's property).

¶30 Broughton's argument again fails. While we noted in *Birchler* that "recovery of emotional distress damages in cases of intentional torts is consistent with the modern rule," we did not expand the scope of the statute to conform to the modern rule. 133 Wn.2d at 116. Instead, we cited cases from as far back as 1906 to demonstrate that emotional distress damages have always been available upon proof of an intentional tort. *Id*. at n.4 (citing *McClure v. Campbell*, 42 Wash. 252, 84 P. 825 (1906) (emotional distress damages available from wrongful eviction)). And as noted above, "[a] statute which was enacted with the existing rule of common law in mind[ ] is [not] automatically amended to conform to the new rule adopted by the court." *Spokane Methodist Homes*, 81 Wn.2d at 287. The timber trespass statute does not supply a common law remedy but imposes potential punitive damages for specifically delineated acts. We therefore decline to import the holdings from our common law trespass cases into Broughton's statutory claim.

¶31 We instead look to our cases specifically construing the timber trespass statute. And in each of our cases construing the statute over the last 142 years, the defendant entered the plaintiff's property and committed a direct trespass against the plaintiff's timber, trees, or shrubs, causing immediate, not collateral, injury. Examples include *Birchler*, 133 Wn.2d 106, where the defendant encroached on plaintiffs' properties and removed trees and shrubbery; *Guay*, 62 Wn.2d 473, where the defendants cut a swath on plaintiff's property; destroyed trees, brush,

and shrubs; and denuded the strip; *Mullally v. Parks*, 29 Wn.2d 899, 190 P.2d 107 (1948), where the defendants entered a disputed area and destroyed trees; *Luedinghaus v. Pederson*, 100 Wash. 580, 171 P. 530 (1918), where the defendant trespassed upon plaintiff's land and removed standing timber; *Gardner*, 27 Wash. 356, where the defendants entered plaintiff's land, cut down and converted into shingle bolts and removed plaintiff's cedar trees; and *Maier v. Giske*, 154 Wn. App. 6, 21, 223 P.3d 1265 (2010), where the defendant entered a disputed area and destroyed trees and plants. These cases strongly suggest that the timber trespass statute does not apply when a defendant fails to prevent the spread of a fire.

¶32 Further, Division Three of the Court of Appeals considered an analogous case and held that the plaintiffs could not bring a timber trespass claim for tree damage due to fungus because the statute did not contemplate an award of damages for canal seepage. *Seal v. Naches-Selah Irrigation Dist.*, 51 Wn. App. 1, 751 P.2d 873 (1988). In so holding, the court rejected the plaintiffs' claim that there was no distinction " 'between trees damaged by the trespass of an individual with a chain saw, or by the trespass of a thing under a person's control.' " *Id.* at 4. The court refused to accept the plaintiff's argument that the girdling of a tree by a fungus was " 'as much a trespass as the girdling of a tree by a human hand.' " *Id.* Although Broughton attempts to distinguish *Seal*, the reasoning in *Seal* provides persuasive authority that the statute is not implicated here.

¶33 In sum, our canons suggest that the legislature used the phrase "otherwise injure" to describe direct trespasses that are comparable to cutting down, girdling, and carrying off, and intended the statute to apply in the absence of physical trespass to a plaintiff's land. Our cases demonstrate that the statute applies only when a defendant commits a direct trespass causing immediate injury to a plaintiff's trees, timber, or shrubs. Based on our canons and cases, we make two conclusions: (1) a plaintiff cannot

recover damages under the timber trespass statute when a defendant commits an indirect act or omission that causes mere collateral injury but (2) a plaintiff may recover damages when a defendant commits a direct trespass causing immediate injury to a plaintiff's trees, even if the defendant is not physically present on the plaintiff's property.

## C. Persuasive Authority

¶34 We generally do not rely on cases from other jurisdictions to interpret our own statutes, but when it is helpful to us, we do. *Meyer v. Burger King Corp.*, 144 Wn.2d 160, 166-67, 26 P.3d 925 (2001). Both Broughton and the defendants cite persuasive authority to support their arguments. Although these cases provide only limited value, we address them in turn.[14]

### 1. *Similar statutes*

¶35 Courts interpreting identical or similar statutes reject punitive damages for fires spreading from defendants' lands. For example, in *Osborne v. Hurst*, 947 P.2d 1356, 1361 (Alaska 1997), the Supreme Court of Alaska found that its nearly identical timber trespass statute did not apply where the defendant set a grass fire that spread out of control and destroyed the plaintiff's trees because the defendant did not act with intent. *Id*. In *Jordan v. Stevens Forestry Services, Inc.*, 430 So. 2d 806 (La. Ct. App. 1983), the Court of Appeals of Louisiana found that a defendant, who had lost control of a deliberately set burn on his own property, was not liable for treble damages because he did not engage in "any willful *or* intentional acts . . . which resulted in the destruction of [the plaintiff's] trees."

---

[14] Persuasive authority is not very helpful to us in this case. This is true not only because most of the cited cases construe much broader statutes, but also because Washington, unlike other states, employs a very restrictive approach to punitive damages. Unlike Alaska, Louisiana, California, Oregon, and Idaho, Washington prohibits the recovery of punitive damages as a violation of public policy unless expressly authorized by statute. *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 96 Wn.2d 692, 635 P.2d 441, 649 P.2d 827 (1982). Our interpretative approach should account for this philosophical difference.

*Id.* at 809. But because we are concerned with the defendants' conduct and location, not the defendants' intent, these cases are of little help to us.

### 2. *Broader statutes*

¶36 Courts interpreting broader statues have held that a plaintiff may recover damages when a defendant destroys the plaintiff's trees by fire. For example, in *Kelly v. CB&I Constructors, Inc.*, 179 Cal. App. 4th 442, 102 Cal. Rptr. 3d 32 (2009), the California Court of Appeals held that fire damage constitutes injury to trees. In *Worman v. Columbia County*, 223 Or. App. 223, 195 P.3d 414 (2008), the Court of Appeals of Oregon recognized that the spraying of herbicides on trees and shrubs is a " 'deliberate trespass such as involved in cutting standing timber.' " *Id.* at 238 (internal quotation marks omitted) (quoting *Meyer v. Harvey Aluminum*, 263 Or. 487, 497, 501 P.2d 795 (1972)). And in *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1549 (D. Idaho 1992) (quoting Idaho Code § 6-202A (1990)), the United States District Court held that the Idaho timber trespass statute defines "entry" to include " 'going upon or over real property, either in person or by causing any object, substance or force to go upon real property.' "

¶37 But the statutes construed in these cases are substantially different from the language of former RCW 64.12.030. California's statute provides a broad remedy "[f]or wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof." Cal. Civ. Code § 3346(a). Oregon's statute contains a separate clause imposing liability for willfully injuring trees. Or. Rev. Stat. Ann. § 105.810(1). And Idaho's statute expressly requires "entry" and includes a legislative definition of the word "enter." *See* Idaho Code Ann. § 6-202A. Because we "need not adopt the construction placed on a similar statute in another state if the language of the statute . . . is substantially different" from the language of our own, we do not adopt the construction of these statutes. *Everett Concrete*

*Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 826, 748 P.2d 1112 (1988).

## IV. CONCLUSION

¶38 When the timber trespass statute was enacted, the term " 'trespass' " had " 'a well ascertained and fixed meaning.' " *Suter*, 35 Wash. at 7 (quoting *Roundtree*, 34 Ala. at 554). It did not refer to indirect acts or culpable omissions causing collateral damage, but only to direct acts causing immediate injuries. *Id.* (" 'It would be a perversion of language to denominate an act, which produced a consequential injury to real or personal property, a trespass. It would be a perversion alike of the legal and common acceptation of the words.' " (quoting *Roundtree*, 34 Ala. at 554)). It therefore seems likely that the territorial legislature intended the term "trespass" to carry this restrictive meaning in the timber trespass statute. Further, our canons and case law strongly suggest that the legislature intended the timber trespass statute to apply only when a defendant commits a direct trespass that immediately injures a plaintiff's trees. We therefore hold that a plaintiff cannot recover damages under former RCW 64.12.030 and RCW 64.12.040 for trees damaged by a fire that spreads from a defendant's neighboring parcel, where the alleged acts or omissions of the defendant caused only collateral injury. We further hold that a plaintiff may recover from a defendant who commits a direct trespass that causes immediate, not collateral, injury to a plaintiff's tree, timber, or shrub, even if the defendant has never been physically on the plaintiff's property. Accordingly, we answer no to the certified question.

MADSEN, C.J.; C. JOHNSON, OWENS, and J.M. JOHNSON, JJ.; and ALEXANDER, J. PRO TEM., concur.

¶39 WIGGINS, J. (dissenting) — This case presents substantially the same questions as *Jongeward v. BNSF Rail-*

*way*, 174 Wn.2d 586, 278 P.3d 157 (2012). In that case, I dissented because the majority approach virtually eliminates liability for "casual or involuntary" trespass, which our timber trespass statutes plainly contemplate. *See* former RCW 64.12.030 (CODE OF 1881, § 602); RCW 64.12.040. I explained that the ejusdem generis rule and strict construction for penal statutes simply have no application to our timber trespass scheme. Further, the historical distinction drawn by the majority is not supported by the statute's history or text. For the reasons set forth in my dissenting opinion in *Jongeward*, I also dissent in this case.

¶40 I respectfully dissent.

CHAMBERS and STEPHENS, JJ., concur with WIGGINS, J.