KNOLL, Judge.
This appeal concerns the award of treble damages for wrongfully felled timber. Plaintiff, C. Herman Williams, brought this action against Concordia Electric Co-op. (hereafter Concordia) and Industrial Helicopters, Inc. (hereafter Industrial) for damages he sustained when Concordia cut and felled timber off of its right-of-way.
Concordia filed a third-party demand against Industrial seeking indemnification, claiming that if the trial court allowed plaintiff to recover damages, Industrial should be held liable alone, in that it was their negligence which caused such damages and not Concordia.
The trial court found that while there was a legal servitude of right-of-way in Concordia’s favor on plaintiff’s property, it only extended twenty feet. As a result, plaintiff was awarded damages for trees that were felled beyond the twenty feet right-of-way. The trial court assessed the timber damage in the amount of $2,300 pursuant to LSA-R.S. 56:1478.1c.[1] and found that Concordia and Industrial were liable, in solido, for three times the market value of the timber destroyed, for a total of $6,900. The trial court also found that Concordia willfully and intentionally violated provisions of subsection A, of LSA-R.S. 56:1478.1 and applied subsection B, awarding $5,000 attorney’s fees, and also awarded $9,000 for general damages associated with intentional trespass.
Concordia appeals urging the following assignments of error: 1) the trial court erred in finding that the existing and reasonable width of the right-of-way was twenty feet; 2) the trial court erred in not granting Concordia the relief prayed for in its third-party demand against Industrial; and 3) the trial court erred in applying the provisions of LSA-R.S. 56:1478.1 to Con-cordia. Concordia has not assigned as error and does not argue the damages awarded for intentional trespass, and accordingly we will allow that award, $11,300, to stand.
Industrial also appeals, urging the following assignments of error: 1) the trial court was in error in, finding, as a matter of fact, that the damage sustained by C. Herman Williams, resulted directly or indirectly, from the application of a chemical herbicide by Industrial; and 2) the trial judge was in error in applying the provisions of LSA-R.S. 56:1478.1 to Industrial.
FACTS
Plaintiff, C. Herman Williams, sought damages from Concordia and Industrial for destruction of timber located on his property in LaSalle Parish, Louisiana. The damage was to two separate tracts of land: one lying in Section 2, Township 9 North, Range 4 East; and the other lying in Sec *1183 tion 26, Township 10 North, Range 4 East. Both tracts were owned by plaintiff and were traversed by an electrical high line belonging to Concordia.
In late July of 1984 Concordia and Industrial entered into a contractual agreement wherein Industrial agreed to perform aerial application of a contact herbicide to kill brush and overhanging limbs on Concor-dia’s right-of-way. Concordia identified the rights-of-way to be sprayed on maps it supplied to Industrial. They further provided a representative to be on the ground and coordinate the spraying operation. Industrial was told by Concordia that a twenty feet right-of-way needed to be sprayed and adjusted its equipment accordingly. The process of application was to have the helicopter fly directly over the center of the power line and cause the herbicide to be pumped under pressure down into the right-of-way. The proposed effect was to kill all of the underbrush and any overhanging limbs.
Plaintiff’s property was sprayed in early August of 1984. Sometime thereafter, in the fall of 1984, plaintiff came upon a work crew of Concordia cutting trees outside of Concordia’s right-of-way on one of his two tracts of land. After discovering that six or seven trees had been cut from his land, he immediately instructed the crew to leave the premises. Subsequent to that time, at least two additional logging operations by Concordia were conducted on plaintiff’s property causing further loss to plaintiff. Suit was filed wherein plaintiff sought damages for loss of timber, loss of aesthetic value, mental anguish, cost of cleaning and clearing the damaged land and treble timber damages provided by LSA-R.S. 56:1478.1.
Concordia had maintained a power line along this property since sometime in the late 1940’s. Plaintiff was aware of the existence of the lines and Concordia maintained a cleared right-of-way during this time of fifteen to twenty feet. In this litigation, Concordia contends that it had a forty feet right-of-way servitude. The existence of the servitude is not in dispute, however, the width of the servitude is disputed.
ACQUISITION OF SERVITUDE BY A COOPERATIVE
The trial court handed down well considered reasons in finding that the width of Concordia’s right-of-way servitude was twenty feet. As such, we adopt the trial court’s reasoning as our own concerning this issue, as follows:
“CONCORDIA ELECTRIC asserts that it has a valid servitude over the property of PLAINTIFF for the purpose of. transmitting electricity by virtue of the provisions of Louisiana Revised Statute 12:428 which reads as follows:
A cooperative shall acquire a servitude on an immovable, unless such immovable is owned by the federal government or state government or any agency or subdivision thereof, for the operation and maintenance of its electric transmission and distribution lines, along, upon, under or across any such immovable by virtue of the uninterrupted [sic] maintenance of such lines without the written or other consent of the owner thereof, along, upon, under or across the immovable for a period of one year; provided such servitude and operation does not interfere with the use of said property by other public utilities; provided further that in all cases where the written consent of the owner for the establishment of a servitude has been obtained and a line has been constructed along, upon, under or across the property under said consent it is not necessary that the written consent be recorded in the conveyance or other records of the parish where the property is located in order to make the servitude effective as to third parties.
The Court agrees that this statute does grant unto CONCORDIA ELECTRIC a right-of-way for electrical power transmission, but it does not address the question of the size of the right-of-way. The evidence presented reflects that prior to spraying the right-of-way varied from *1184 fifteen to twenty feet, (15' to 20'), or seven and one-half to ten feet (7V2' to 10') on either side of the center of the high-line [sic] ... In its Brief to the Court, CONCORDIA ELECTRIC argues that since it maintained a three phase line with a ten foot (10') crossbar, it should be allowed to claim a forty foot (40') servitude and keep that area clear of trees or brush. The Court might agree with that argument if such a servitude had been maintained since the institution of the line. However, at all times prior to the spraying the largest right-of-way claimed or maintained by CONCORDIA ELECTRIC was twenty feet (20'). In fact, the pilot for INDUSTRIAL HELICOPTER testified that he was specifically informed that the right-of-way was twenty feet (20') and he therefore adjusted his machine accordingly. The Court agrees with the rule of Barnes v. Dixie Electric Membership Corporation, 323 So.2d 247 (1st Cir.App.1975) to the effect that:
The limits of the servitude ... and the rights of the servitude owner must necessarily revolve around what is reasonable and necessary from the point of view of both parties.
Id at 249.
However, the Court cannot accept the position that CONCORDIA ELECTRIC can simply increase the right-of-way which it has maintained since the 1940’s simply because it chooses to do so. To apply such an evaluation would be a rather one sided balancing of the interest. The Court finds in this case that the existing and reasonable width of the right-of-way has been for more than thirty-five (35) years, and still is twenty feet (20').”
APPLICATION OF TREBLE DAMAGES UNDER LSA-R.S. 56:1478.1
Concordia and Industrial contend the trial court erred in applying the provisions of LSA-R.S. 56:1478.1
LSA-R.S. 56:1478.1 provides:
“A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. The provisions of this section shall not apply to the clearing and maintenance of rights-of-way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
E. Whoever violates the provisions of Subsection A as they relate to the cutting of standing cypress trees on water bottoms owned by the state of Louisiana shall, in addition to the other penalties otherwise provided in this Section, be subject to a fine not to exceed $5,000, imprisonment not to exceed six months, or both.” (Emphasis added.)
The issue we must first address is whether this treble damage statute applies at all to the clearing and maintenance of rights-of-ways.
*1185 The legislative intent behind LSA-R.S. 56:1478.1 was to impose severe sanctions upon those who flagrantly disregarded the property rights of timber owners. Morgan v. Fuller, 441 So.2d 290 (La.App. 2nd Cir.1983), writs denied, 443 So.2d 596, 599 (La.1983); Dowden v. Security Ins. Co., 471 So.2d 1165 (La.App. 3rd Cir.1985). Subsection C is principally aimed at tree pirates who cross clearly marked ownership lines and cut timber or remove timber for their own profit. Jordan v. Stevens Forestry Services, Inc., 430 So.2d 806 (La.App. 3rd Cir.1983). Subsections B and C are punitive damages; therefore, they must be strictly construed. Jordan v. Stevens Forestry Services, Inc., supra.
Applying strict rules of construction, we note subsection D of R.S. 56:1478.1 provides exceptions for the application of treble damages. Although the paragraph is poorly worded, we conclude it describes three classes of persons against whom treble damages may not be awarded. They are:
1. Rights-of-way owners clearing and maintaining them. (This would include, beside utilities, all other owners of rights-of-way, both public and private, e.g., pipelines, gravity drainage rights-of-way, highways, streets, telephone lines, etc.)
2. A utility acting in good faith to minimize the damage or harm occasioned by an act of God.
3. Registered land surveyors when they are surveying.
It would be unreasonable to say that subsection D, making the provisions of R.S. 56:1478.1 inapplicable to the clearing and maintenance of rights-of-ways, applies only so long as the owner of the right-of-way stays in it. Such an interpretation would render subsection D meaningless. To give subsection D meaning, we find it applies to the servitude owner clearing or maintaining his right-of-way who strays off of it. In such a case, the servitude owner is subjecting himself to trespass damages, but not punitive damages under R.S. 56:1478.1. Thus, since the record shows that Concor-dia was maintaining its right-of-way when it caused timber damage to plaintiff, the provisions of R.S. 56:1478.1 are not applicable; the trial court erred in applying the treble damage statute.
The trial court also awarded $5,000 attorney’s fees under the provisions of R.S. 56:1478.1 which we have determined is not applicable to the present case. This award is now set aside since attorney’s fees cannot be granted except by statute or contract. General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980).
INDUSTRIAL’S LIABILITY
The trial court found Industrial liable with Concordia for the loss of timber as a result of Industrial’s spraying operation. On this issue the trial court found: “In this case, there was no damage to the property prior to the spraying operation in August of 1984. Immediately thereafter damage to standing timber manifested itself and, on at least three occasions, the employees and agents of CONCORDIA ELECTRIC removed portions of the damaged timber.” Industrial contends the trial court erred in finding that the damages resulted directly or indirectly from the spraying operation by Industrial.
After a careful review we find the record does not support that Industrial was responsible for the 120 trees either cut or felled by Concordia. It is well established that in tort cases, the plaintiff must prove his case by a preponderance of the evidence; proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So. 2d 151 (1971). To find Industrial liable, it must be shown that taking the evidence as a whole, the chemical herbicide damaged the trees in question.
The record shows that the testimony of Jim Robertson, the pilot for Industrial is unrefuted. His testimony shows the following: He has been flying for a total of *1186 19 years, but he has been doing aerial application of sprays for the past 14 years. He was told by Concordia to spray a 20 feet right-of-way. Concordia gave him a map of the right-of-way showing the area marked in yellow to be sprayed. A helicopter was used to spray the chemical herbicide. The type of spray is not a fog but rather heavy droplets similar to rain. The chemical is sprayed from a microfoil boom designed specifically for low drift applications on right-of-ways. The boom has a hydraulic pump and he maintained a pressure of 18-20 pounds. The boom is mounted on the front skids of the helicopter. The boom is adjustable; for a 20 feet right-of-way he adjusted the boom to 16 feet so the spray would not go outside of the right-of-way. He flew over the center of the power lines and applied the chemical. His daily log shows he sprayed the right-of-way in question on August 5,1984, in an area that is known as the Aimwell area. There were no unusual weather conditions and the wind was calm; he did not have trouble with the helicopter or the boom. There was a crew of Industrial and Concordia men on the ground during the spraying operation and he had a two-way radio to communicate with them. Approximately 90% of the lines in this area were along a roadway so he adjusted his boom to 8 feet to spray only one side. Shortly before trial he viewed the area he sprayed and he did not see any evidence of spraying off of the right-of-way.
The record shows that the first indication plaintiff had of timber damage on his property was in the fall of 1984 when he came across a Concordia crew cutting his timber outside of the right-of-way. Concordia had felled six or seven dead trees. Plaintiff noticed that the felled trees damaged the standing timber under it or adjoining it. Plaintiff ordered the Concordia crew off his property; however, another Concordia crew returned to plaintiff’s property on approximately two occasions and felled more trees without plaintiff’s knowledge or consent. The trial court found that Con-cordia cut approximately 120 trees or 10,-000 board feet outside of the right-of-way. The trees that were cut down were in isolated areas and the pictures introduced into evidence show that the area was surrounded by healthy vegetation. There was evidence introduced that showed this area had a serious Southern Pine Beetle outbreak before 1984. Mr. Harold Parker, a district foreman for Concordia whose duties included overseeing the right-of-way and service crew in the district, testified that there was an outbreak of beetles, off and on, for three years before 1984, which caused Con-cordia to cut down trees. Mr. Bobby Ray Parker, another Concordia employee of ten years, testified that they always have dead pines and he routinely cuts them down. Two experts in the field of forestry testified, one on behalf of the plaintiff and one on behalf of Industrial; the weight of their testimony does not show that more probable than not chemical herbicide killed the trees. The evidence in the record against Industrial is slight — it is not “more probable than not” evidence. The evidence shows that more probable than not the trees in question endangered the lines in the opinion of Concordia employees and were felled by Concordia; what caused the trees to be endangered, whether it was Southern Pine Beetle, chemical poisoning, or some other cause, was not shown to a point of probability. Therefore, we find it was error for the trial court to find Industrial liable with Concordia for timber damages.
CONCORDIA’S THIRD-PARTY DEMAND
Concordia’s final assignment of error is that the trial court erred in not granting Concordia relief prayed for in its third-party demand against Industrial. In this demand Concordia prayed that it be entitled to judgment against Industrial for any judgment rendered against Concordia.
In the contract between Concordia and Industrial, paragraph six sets forth Industrial’s obligation to Concordia for damages, which reads:
“6. Contractor assumes all off right-of-way chemical damage and all damage to agricultural crops, fruit trees, orchards, shade trees, ornamental plants within the *1187 rights-of-way that are not visible to Contractor because of brush and undergrowth within the right-of-way.”
A clear reading of paragraph six shows that the contracting parties intended Industrial to be liable for “all off right of way chemical damage.” (Emphasis added.) For reasons aforestated, since we find that it was not shown that more probable than not that Industrial killed the trees in question, Concordia is not entitled to relief against Industrial.
For the foregoing reasons, the judgment of the trial court as it pertains to Industrial is reversed and set aside; the judgment of the trial court casting Concordia with treble damages and attorney’s fees under LSA-R.S. 56:1478.1 is reversed and set aside; the judgment of the trial court casting Concordia with damages for timber loss and intentional trespass is affirmed. Therefore, IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of C. Herman Williams and against Concordia Electric Co-op, in the sum of Eleven Thousand Three Hundred and No/100 ($11,300) Dollars, plus legal interest from date of judicial demand until paid. All costs of this appeal are assessed to Concordia Electric Co-op.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

. Since this case was decided, LSA-R.S. 56:1478.1 has been changed to LSA-R.S. 3:4278.1 by Acts 1987, No. 144.