# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-114


**WILLIAM J. BERARD AND JACQUELINE CASTLE BERARD**

**VERSUS**

**ST. MARTIN PARISH GOVERNMENT AND ACE AMERICAN INSURANCE COMPANY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 77377
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**THIBODEAUX, Chief Judge, concurs in the result.**
**PICKETT, J., concurs in the result and assigns written reasons.**


**REVERSED IN PART AND AFFIRMED IN PART.**

**Jacques P. Soileau**
**Soileau Law Office**
**Post Office Box 344**
**Breaux Bridge, Louisiana 70517**
**(337) 332-4561**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **William J. Berard**
    **Jacqueline Castille Berard**

**James L. Pate**
**Sara Rodrigue**
**Laborde & Neuner**
**Post Office Drawer 52828**
**Lafayette, Louisiana 70505-2828**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **St. Martin Parish Government**
    **Ace American Insurance Company**

**CONERY, Judge.**

The trial court found in favor of William and Jacqueline Berard (the Berards) and against the St. Martin Parish Government and its insurer, Ace American Insurance Company (collectively, St. Martin Parish), and awarded treble damages, costs, and attorney fees for the destruction of three live oaks and seven pecan trees during the clearing of a drainage channel located in St. Martin Parish. For the following reasons, we affirm the damage award of $37,790.00 for the loss of the trees and damage to the Berards' property, plus trial court costs of $1,300.00, but we reverse the award of treble damages of $113,370.00 and attorney fees of $35,000.00.

## FACTS AND PROCEDURAL HISTORY

In September of 2010, St. Martin Parish performed maintenance and drainage improvement work on a drainage channel located on Sosthene Guilbeau Road near Breaux Bridge, Louisiana. The drainage channel at issue runs between the property of the Berards and that of their neighbor to the west, Eta. S. Lalonde. The boundary line between the two properties is in the center of the drainage channel.[1]

The Berard and Lalonde properties were also separated by a tree line on the eastern, or Berard, side of the boundary, which served as a fence to enclose and shade the pasture for their horses. There was an old fence constructed of barbed wire twisted around the tree line, as well as some cypress fence posts placed on the property by Mr. Berard's grandfather.

---

[1]St. Martin Parish did not conduct a survey of the property prior to the work on the drainage channel. However, the Berards' expert surveyor, Michael Breaux, testified that the boundary line between the two properties was, in fact, in the center of the drainage channel.

The entirety of the Berards' property in question is described in the St. Martin Parish Assessor's Parcel Reports, dated October 20, 2009, and consists of parcels 04301A3934, 04301A4334, and 04301A4534. The October 20, 2009 Parcel Reports introduced in to the record at trial consist of properties that are described as "LANDOWNER NO. 2 RESIDENTIAL," "LANDOWNER NO. 4 VACANT," and "LANDOWNER NO. 6 VACANT." The residential lot is .616 acres, assessed at $5000.00. The two vacant lots are each approximately .516 acres, assessed at $3,000.00 each, or $6,000.00 total. [2]

Due to a problem with drainage back up on the adjoining Lalonde property, Ms. Lalonde made a request to her Parish Councilman, James Hebert, to have St. Martin Parish clear the debris, trees, and tree roots from the drainage channel in order to facilitate proper drainage. Councilman Hebert contacted the St. Martin Parish Department of Public Works (DPW) to put in the request, and Parish Road Supervisor Ronnie Angelle conducted an inspection of the drainage channel.

After the inspection, Angelle concluded the drainage channel was silted up with sedimentation and vegetative debris, including trees and tree roots. Based on the condition of the drainage channel, he proposed a maintenance and improvement project to improve the limits of the entire channel. DPW further confirmed that St. Martin Parish had maintained the drainage channel in the past for many years. Angelle testified at trial he personally worked on the drainage channel for approximately twenty to thirty years as an employee of the DPW. This prior maintenance thus granted the DPW the authority to perform the proposed

---

[2]Defendants' Exhibit C (Parcel Reports in globo, Pages 283, 285 and 287).

project, as St. Martin Parish had established a "maintenance servitude" on the Berards' property.[3]

On August 11, 2010, St. Martin Parish sent correspondence to all affected landowners, including the Berards, notifying them of the impending work on the drainage channel. The correspondence contained a legal description of the drainage channel and a map highlighting the proposed maintenance. The letter to the adjacent property owners also stated:

> In an effort to improve drainage in this area, this project will include the removal of trees *along the canal and the subsequent excavation of the canal*. The trees will be burned and buried and excavated material will be spread onto the property as per our standard operating procedure.

(Emphasis added.)

The August 11, 2010 correspondence from St. Martin Parish also advised the landowners to contact Nanette Theriot, Public Works Technician for St. Martin Parish, if they had any questions or concerns, but a response was not necessary. The letter was sent to the landowners as a courtesy to inform them of the plans for maintenance of the drainage channel, which was "scheduled to begin within the next twenty-one (21) to thirty-five (35) days weather permitting." The correspondence also notified the landowners that James Hebert, District 8 Council Member, "played a major role in getting this job approved."

The Berards did not contact Theriot at the DPW office, but instead visited Councilman Hebert at his home to discuss the upcoming project. Mr. Berard is a riverboat captain, and he was scheduled to be on the Ohio River during the planned execution of the drainage channel project. The details of the Berards' conversation

---

[3]Defendants' Exhibit C (in globo - St. Martin Parish Drainage Project, Page 284, which reflects a servitude based on "Virtue of Maintenance Channel").

with Councilman Hebert were disputed at trial. Hebert denied that the Berards voiced any concerns over the anticipated tree removal. Mr. Berard testified that he was very concerned for his property, his horses and the trees, which included trees planted at least seventy-two years ago by Mr. Berard's grandfather and trees planted some thirty or so years ago by Mr. Berard. He specifically testified that he told the councilman he did not want their large trees to be removed. Councilman Hebert testified that the Berards were concerned about the safety of their horses during the work, but they did not reserve any trees or request that the trees not be removed. It is undisputed that several large trees on or near the drainage channel were removed during the project that began in September of 2010.

Following the removal of the trees on the Berards' property, St. Martin Parish cleaned up all debris, leveled the property, and put up a fence in order to contain the Berards' horses. At the Berards' request, St. Martin Parish President Guy Cormier toured their property to personally view the work done by the DPW on the drainage channel and to discuss the loss of the trees. During the meeting, Mr. Berard expressed his concern over the barbed wire used to construct the fence and the danger it posed to his horses. As a result, Cormier instructed the DPW to return to the Berards' property and construct a new fence to the Berards' specifications, including the use of a wire that would not hurt or place the Berards' horses at risk.

Suit was filed by the Berards on January 18, 2011, seeking damages against St. Martin Parish for the wrongful and intentional destruction of their property, specifically including nine thirty-year-old pecan trees, as well as other damages, which eventually included three live oak trees.

4

A bench trial was held on June 19-20, 2011. At the close of evidence and testimony, the trial court found in favor of the Berards and ruled that St. Martin Parish had removed trees from the Berards' property without their permission. The trial court then found that St. Martin Parish had the right to clear the drainage channel of obstructions as the result of a right-of-way granted by the Berards' ancestor-in-title, William Berard, or by virtue of prior maintenance performed on the property. The trial court did not award damages for the trees which were removed by St. Martin Parish which he determined were impeding drainage.[4]

The trial court then determined that seven pecan trees and three live oak trees removed from the Berards' property by St. Martin Parish, without the Berards' consent, however, were not impeding the drainage channel.[5] The trial court valued the seven pecan trees and three live oak trees at $37,790.00, based on the uncontradicted testimony of the Berards' expert arborist, James Foret.

The trial court then applied the provisions of La.R.S. 3:4278.1, the timber piracy statute, and found bad faith on the part of St. Martin Parish based on its failure to conduct a survey prior to beginning the drainage channel project. The trial court then awarded the Berards treble damages of $113,370.00, attorney fees of $35,000.00, and witness fees of $500.00 for the surveyor, Michael Breaux, and $800.00 for the expert arborist, James Foret. The total sum of the award to the Berards was $149,670.00 plus interest and costs.[6]

---

[4]The trial court did not state any reasons or factual findings for its conclusion that the trees for which it awarded damages were not, in fact, impeding drainage.

[5]It is significant that aerial photos taken by Google Earth and introduced into evidence show that all the trees in question were on or very near the drainage channel line on the Berards' property. Exhibit A5 (in globo).

[6]Plaintiffs' claims for mental anguish and other ancillary damages were denied based on the holding of *Sagnibene v. Roy O. Martin Lumber Co.*, 10-1331 (La.App. 3 Cir. 6/1/11), 68 So.3d 32, which prohibited the recovery of both statutory and tort damages. No answer to appeal was filed by Plaintiffs/Appellees, and, thus, this issue is not before the court.

## ASSIGNMENTS OF ERROR

Appellant provides the following assignments of error:

I.  The trial court failed to recognize that the Parish had a legal servitude on the Berards' property pursuant to La. R.S. 38:113, giving it the right to clear trees from the channel within 100 [feet] on the Berards' property. This legal error must be reversed.

II. The trial court imposed treble damages, attorney's fees, and costs pursuant to La. R.S. 3:4278.1 despite finding that the Parish had a virtue of maintenance servitude and/or right-of-way on the plaintiffs' property. This legal error must be reversed.

III. The trial court expanded the scope of La. R.S. 3:4278.1, in direct contravention of the recognized purpose of the timber piracy statute, to impose penalties and sanctions against the Parish. This legal error must be reversed.

IV. The trial court substituted its judgment for that of the Parish and the Department of Public Works when it determined that the Parish removed 7 pecan trees and 3 live oak trees which were not impeding drainage. The court lacked the authority to do so, and this legal error must be reversed.

## DISCUSSION

**Standard of Review**

"Appellate review of a question of law is simply a decision as to whether the [trial] court's decision is legally correct or incorrect." *Jim Walter Homes, Inc. v. Jessen,* 98-1685, p. 5 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 702 (citing *Ducote v. City of Alexandria*, 95–1269 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118). "If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." *Id.* (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)). If an appellate court finds that a reversible error of law was made by

the trial court, it must review the facts *de novo* and render a judgment on the merits. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

The trial court's ruling on the legal issues surrounding the application of La.R.S. 38:113 and 3:4378.1 to the facts is reversible error that necessitates the reversal of the award of treble damages and attorney fees to the Berards. This reversible error of law by the trial court requires us to conduct a de novo review of the facts and properly apply the law.

**Application of La.R.S. 38:113**

All four assignments of error urged by St. Martin Parish are related to St. Martin Parish's right-of-way to clear the drainage channel. One such right-of-way is the statutory application of La.R.S. 38:113 which provides:

> The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.[7]

Parishes in Louisiana have been granted the discretion to create a drainage district within the parish. La.R.S. 38:1602 provides:

---

[7]The Berards contend in their Reply Brief that the application of La.R.S. 38:113 was never raised in the trial court and is now raised for the first time on appeal. However, St. Martin, in its "Answer and Affirmative Defenses To Petition For Damages," specifically states in Paragraph 13, "The St. Martin Parish Government has a drainage servitude on the subject property, and as a result, its actions did not constitute trespass and it is not responsible for trespass damages." Thus, though the statute itself was not specifically cited by Defendants/Appellants at trial, the issue was raised at the trial court level and is properly before this court. Fact pleading is allowed by Louisiana courts in La.Code Civ.P. art. 854, and all legal issues raised by the fact pleadings at trial can be properly considered on appeal.

For the purpose of draining and reclaiming the undrained or partially drained marsh, swamp, and overflowed lands in Louisiana that must be leveed and pumped in order to be drained and reclaimed, the various parishes on their own initiative, may create drainage districts embracing all or part of the land in their parishes. All of the land in any drainage district shall be contiguous. No drainage district created under this Part shall contain within its limits less than five landowners, resident or non-resident and no land shall be included within more than one drainage district.

If a parish chooses to create a drainage district, then La.R.S. 38:1605 requires the Louisiana Department of Public Works to approve the drainage district.

The creation of such a drainage district is not mandatory, however. The parish governing authority is granted the power to perform drainage work where no drainage district exists. This authority is specifically granted in La.R.S. 33:1236(13) which states in pertinent part:

The police juries and other parish governing authorities shall have the following powers

. . .

(13) To construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith… They may perform all other acts necessary to fully drain all the land in their respective parishes and maintain such drainage when established. This Paragraph is intended to furnish additional means whereby parishes in the State of Louisiana may accomplish the objects and purposes herein referred to, and shall be liberally interpreted.

(Footnotes omitted.)

This court in *Dugas v. St. Martin Parish Police Jury*, 351 So.2d 271, 273 (La.App. 3 Cir. 1977), *writ denied*, 353 So.2d 1046 (La.1978), specifically held, "all public drainage channels within the limits of St. Martin Parish come within the control of the St. Martin Parish Police Jury for the purposes of [La.R.S. 38:113]."

8

The St. Martin Parish Police Jury has been replaced by the St. Martin Parish Government and the Parish Council as the governing body for the Parish of St. Martin, with the Parish President as administrator.

Testimony presented at trial by St. Martin Parish President Guy Cormier and Director of St. Martin Parish DPW Casey Alexander confirmed that St. Martin Parish elected not to create a drainage district, but chose to have all drainage work performed through its DPW. Thus, La.R.S. 38:113 gives St. Martin Parish a legal servitude of one hundred feet on either side of the drainage channel.

This court in *Lavergne v. Lawtell Gravity Drainage District No. 11*, 562 So.2d 1013, 1015 (La.App. 3 Cir. 1990), cited *Terrebonne Parish Police Jury v. Matherne*, 405 So.2d 314 (La. 1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234 (1982), wherein the Louisiana Supreme Court clarified the scope of the protections afforded to a political subdivision with respect to La.R.S. 38:113 and stated:

> La.R.S. 38:113 never authorizes a public body to take or damage private property without just compensation or without due process of law. The "advantage" that a drainage district enjoys when it can exercise the legal servitude established by this article, is that it can enter the property for drainage purposes without being guilty of a trespass, and without exposing itself to damages for a trespass.

However, in order for a drainage district or political subdivision such as St. Martin Parish to take advantage of the one-hundred-foot legal servitude over drainage channels, which grants the right to maintain the drainage in a channel located within the parish, this court in *Whipp v. Bayou Plaquemine Brule Drainage Bd.*, 476 So.2d 1042, 1044-45 (La.App. 3 Cir. 1985), held that the following prerequisites must be met:

> First, the drainage channel must have been either previously improved by the drainage district or *adopted* without prior improvement as a necessary part of or extension to improved drainage channels. Second,

9

the drainage channel must be a public channel. Third, the channel must be selected by the drainage district and recommended and approved by the Office of Public Works.[8]

**First Prong of *Whipp* - La. R.S. 38:113**

Testimony at trial clearly supported both St. Martin Parish's position and the finding of the trial court that the drainage channel on the Berards property met the prerequisites of the first prong of *Whipp* and the application of La.R.S. 38:113. *Whipp* first requires that "the drainage channel must have been either previously improved by the drainage district or *adopted* without prior improvement as a necessary part of or extension to improved drainage channels." *Id.* at 1044.

Ronnie Angelle, the supervisor of the project involving the Berards' property and a thirty-year employee of St. Martin Parish, testified that he had maintained the channel for twenty to thirty years. He recalled personally performing maintenance work there six to seven years before the incident at issue. Casey Alexander, Director of the St. Martin DPW, also confirmed that St. Martin Parish had maintained the channel in the past and, consequently, had the authority to complete the project. The record clearly established that St. Martin Parish had a lawful "maintenance" servitude on the drainage channel in question.

Additionally, documentation placed into the trial record indicates that on May 20, 1986, the Berards' ancestor-in-title, William Berard, signed a right-of-way agreement which granted "to the Parish of St. Martin through its Police Jury, the necessary right-of-way for the construction, maintenance and improvement of drainage facilities through and across [his] property." This declaration was

---

[8]La.R.S 38:113 was amended and reenacted in 1991 to remove the requirement that the channel be "recommended and approved by the Department of Public Works."

followed by the legal description of the property at issue. The document further stated, "[t]he consideration for this grant is the expectation of benefits to said property as a result of the drainage improvement program."

Thus, the public drainage channel on the Berards' property appropriately meets the prerequisites of prong one of *Whipp* and the protections of La.R.S. 38:113, by virtue of the maintenance and dredging of the drainage channel by the St. Martin Parish DPW, as well as by the written right-of-way granted to St. Martin Parish by William Berard to maintain the drainage channel as needed on the entirety of the property in question.

**Second Prong of *Whipp* - La.R.S. 38:113**

*Whipp* also requires that the channel at issue be a public drainage channel. This second prong "requires a finding that the channel has been used for the purpose of drainage for many years and that this drainage protects the interest of the public in general rather than the interests of particular individuals." *Whipp*, 476 So.2d at 1046 (citing *Dugas*, 351 So.2d 271). Testimony at trial indicated the channel at issue runs for a thousand feet along the property owned by several individuals, including the Berards, and eventually outfalls into a public bayou, which impacts not only the public and the adjacent landowners, but those individuals living near the outfall bayou. Angelle also testified that St. Martin Parish has maintained the channel for twenty to thirty years, and the Berards confirmed the channel has existed for at least thirty-five years.

Uncontradicted testimony at trial reflected that the trees, roots, and debris blocked the flow of drainage from the adjacent neighbor's property. Poor drainage was the "root" of the problem, as the debris, trees, and roots prevented water from properly flowing through to the drainage channel until it reached its next

11

destination, the public bayou. Thus, the public drainage channel on the Berards' property meets the prerequisites of prong two of *Whipp* and the protections of La.R.S.38:113.

**Third Prong of *Whipp* - La.R.S. 38:113**

In 1991, La.R.S. 38:113 was amended and reenacted to provide that a channel "selected by the district" need no longer be "recommended and approved by the Department of Public Works." The only requirement necessary is that the channel be selected by the district or public body in control of drainage projects within the Parish. As previously established, this authority flows to St. Martin Parish by virtue of its replacement of the St. Martin Parish Police Jury.

The record reflects that St. Martin Parish Councilman James Hebert received a request from an affected landowner for St. Martin Parish to clear the subject channel. The request was presented to the St. Martin DPW, an inspection was duly conducted, and the necessary work order was eventually completed. The project was subsequently approved by Councilman James Hebert, Public Works Director Casey Alexander, and Parish President Guy Cormier. The project commenced in September 2010, after due process notice to all adjacent property owners. Thus, the public drainage channel on the Berards' property meets the prerequisites of prong three of *Whipp* and the protections of La.R.S.38:113.

The trial court correctly determined in its ruling that St. Martin Parish had a right-of-way to clear the trees, which required dredging the roots out of the ditches on the Berards' property, and found:

> [T]he Parish had the right to clear the ditch of obstructions due to their continuous maintenance of the right-of-way, or as a result of a right-of-way granted by William Berard which was very vague as to whether it applied to that ditch or not, but the fact that they continuously maintained it gives them the right to maintain it.

**Boundaries of the Legal Servitude - La.R.S. 38:113**

Louisiana Revised Statute 38:113 granted the authority for St. Martin Parish to enter the Berards' property without their permission to maintain the public drainage channel. Pursuant to La.R.S. 38:113, that legal servitude granted to St. Martin Parish, extends to one hundred feet on each side of the channel.

All of the testimony and evidence presented at trial, including the testimony of the Berards and their expert, James Foret, placed the trees at issue within three to four feet from the drainage channel and seven to eight feet from the newly constructed fence. Thus, the record reflects that St. Martin Parish did not exceed the legal servitude granted by virtue of La.R.S. 38:113.

**Application of La.R.S. 3:4278.1**

After the trial court determined that St. Martin Parish had a right-of-way to maintain the drainage channel on the Berards' property, the trial court then erroneously determined that St. Martin Parish had failed to conduct a survey of the Berards' property prior to the work on the drainage channel. Neither the Berards nor Eta S. Lalonde ever disputed that the boundary between the two properties was in the center of the drainage channel.[9] Nevertheless, the trial court applied the provisions of La.R.S. 3:4278.1 (A)(1) and (B) and awarded the Berards "civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney fees and costs."[10]

Louisiana Revised Statute 3:4278.1 provides, in pertinent part:

A. (1) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent

---

[9]Testimony at trial from the Berards' expert surveyor, Michael Breaux, also confirmed that the correct boundary line between the two properties was in the middle of the drainage channel.

[10]Louisiana Revised Statute 3:4278.1 was previously designated as La.R.S. 56:1478.1 but was changed by Acts 1987, No.144.

or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.

. . . .

B. Whoever willfully and intentionally violates the provisions of Subsection A of this Section shall be liable to the owner, co-owner, co-heir, or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney fees and costs.

. . . .

E. The provisions of this Section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God.[11]

The legislative intent of La.R.S. 3:4278.1 was discussed in *Williams v. Industrial Helicopters, Inc.*, 519 So.2d 1180, 1185 (La.App. 3 Cir. 1988) (citations omitted), and the court stated the statute, "was [intended] to impose severe sanctions upon those who flagrantly disregarded the property rights of owners . . . and is principally aimed at tree pirates who cross clearly marked ownership lines and cut timber or remove timber for their own profit." *Williams* further provides, "Subsections B and C are punitive damages; therefore, they must be strictly construed." *Id.* (citing *Jordan v. Stevens Forestry Services, Inc.*, 430 So.2d 806 (La.App. 3 Cir. 1983)).

Applying strict rules of construction, the trial court in *Williams* interpreted subsection (D) of La.R.S. 56:1478.1 (now subsection (E) of La.R.S. 3:4278.1) by listing the exceptions which prohibit a trial court from awarding treble damages, attorney fees, and costs. The court in *Williams* concluded the following three classes of persons may not be assessed with treble damages:

---

[11]Subsection (E) of 3:4278.1 was previously subsection (D) of 56:1478.1.

1.  Rights-of-way owners clearing and maintaining them. (This would include, beside utilities, *all other owners of rights-of-way, both public and private,* e.g., pipelines, *gravity drainage rights-of-way*, highways, streets, telephone lines, etc.)

2.  A utility acting in good faith to minimize the damage or harm occasioned by an act of God.

3.  Registered land surveyors when they are surveying.

(Emphasis added.)

As in *Williams*, the drainage channel work done by St. Martin Parish on the Berards' property would qualify as a "gravity drainage right-of-way," precluding the trial court from awarding treble damages and attorney fees as against St. Martin Parish pursuant to La.R.S. 3:4278.1(E).

Regardless of whether St. Martin Parish had a one-hundred-foot servitude as outlined in La.R.S. 38:113, it is uncontradicted that St. Martin Parish had a conventional written servitude signed by Mr. Berards' ancestor-in-title. It was also uncontested that St. Martin Parish had a de facto maintenance servitude to maintain the drainage channel as part of its drainage improvement program for many years. The exception to treble damages for a public body acting pursuant to lawful drainage servitude set forth in La.R.S. 3:4278.1(E) clearly applies, no matter how we classify the servitude.

The trial court committed legal error in applying treble damages and attorney fees under the "tree piracy" statute against a public body acting pursuant to a lawful drainage servitude.

**Damages**

St. Martin Parish's appeal and assignments of error seek only reversal of the award of treble damages, attorney fees, and costs. St. Martin Parish urges through

its attorney in their brief, "Because the drainage improvement project was done pursuant to several Parish servitudes, the plaintiffs are only entitled to actual damages for the removed trees."

As determined by the trial court in *Whipp,* "[d]espite the existence of a legal servitude under LSA-R.S. 38:113, defendants are not authorized to damage private property without just compensation." *Whipp,* 476 So.2d at 1047 (citing *Matherne,* 405 So.2d 315).

In *Whipp,* "the contractor cut down trees . . . [and] removed fencing between the Whipp property and Boone-Doucet properties." *Id.* at 1044. The *Whipp* court found that La.R.S.38:113 applied to the Whipp property and thus, provided protection to the drainage board for trespass and precluded the award of attorney fees. However, the trial court still awarded damages to the Whipps, and stated:

> As discussed earlier, we find that defendants had obtained a legal servitude over the Whipp Canal. Defendants are liable for damaging the property in connection with the work performed on the Whipp Canal, not for the taking of the Whipps' property. The damage to the property did not amount to a taking of property or an appropriation by the state. Therefore, the trial judge erred in awarding attorney fees to the Whipps.

*Id.* at 1047.

Here, the trial court determined, based on the testimony of the Berards' expert arborist, James Foret, whose testimony was uncontradicted, that the work on the drainage channel resulted in the removal of seven pecan trees valued at $1,970.00 each, for a total of $13,790.00, and three oak trees valued at $8,000.00 each, for a total of $24,000.00.[12] Thus, the total award of damages to the Berards for the loss of their trees was $37,790.00.

---

[12]Foret's determination of the size and the number of trees removed from the Berards' property by St. Martin Parish was based on information he received from the Berards.

In making the award of $37,790.00 to the Berards, the trial court determined that the removed trees were "outside of the right-of-way" and that "they were not obstructing the drainage channel." Again, this finding is legally and factually incorrect as it was clearly established at trial that St. Martin Parish had a servitude to go on the Berards' property and correctly use its discretion to clear the drainage channel of trees, roots, and debris. As stated in *Whipp*:

> A determination by the Drainage Board and the Office of Public Works of the necessity of any extension to a drainage channel is given great deference.
>
> . . . .
>
> No court can substitute its judgment as to the necessity of such a project for the combined judgment of the Drainage Board and the Office of Public Works unless there is evidence of some palpable abuse of discretion.

*Id.* at 1045.

However, while the authority granted to St. Martin Parish pursuant to La.R.S. 38:113, or its conventional or de facto maintenance servitude, allows the necessary work to be conducted in order to maintain the channel drainage, it does not restrict the trial court from awarding damages to the Berards for the loss of the trees. *Id.* at 1047. Therefore, based on the record and the lack of any evidence in opposition to the value of the trees lost in connection with the work performed by St. Martin Parish on the Berards' property, we affirm the trial court's award of $37,790.00. There was no appeal by St. Martin Parish of this award, and the issue was further conceded by counsel for Defendants/Appellants.

This award is greatly in excess of the total assessed value of all of the residential and pasture land at issue. Combined with the cost of the clean-up,

17

leveling, fencing and re-fencing done by St. Martin Parish, this court concludes that St. Martin Parish was in good faith and attempted to treat the Berards fairly.

## DISPOSITION

The trial court committed reversible error in failing to find that La.R.S. 38:113 was applicable to the channel drainage work done on the Berards' property. The trial court did find that St. Martin Parish had a valid conventional and maintenance servitude, but erred in awarding treble damages and attorney fees to the Berards pursuant to the timber piracy statute, La.R.S. 3:4278.1. Therefore, the award of treble damages in the amount of $113,370.00 and attorney fees in the amount of $35,000.00 is reversed. The original award for damage to the Berards' property for the removal of seven pecan trees and three live oaks in the amount of $37,790.00 and the court costs awarded in the amount of $1,300.00 were not appealed and are affirmed. Costs for this appeal are assessed to Plaintiffs/Appellees.

**REVERSED IN PART; AFFIRMED IN PART.**

**WILLIAM J. BERARD AND JACQUELINE CASTLE BERARD**

**VERSUS**

**ST. MARTIN PARISH GOVERNMENT AND ACE AMERICAN INSURANCE COMPANY**

**PICKETT, J., concurs in the result and assigns written reasons.**

I concur in the result reached by the majority. I respectfully disagree that La.R.S. 38:113, as interpreted by *Dugas*, is the governing law in this case. There was no levee or drainage district created by St. Martin Parish, so I do not believe the (quite extensive) one hundred foot servitude for drainage projects exists here. I would find that La.R.S. 33:1236(13) applies in this case.